[No. B108013. Second Dist., Div. Three. July 15, 1999.]

ALEXANDRA D. DATIG, Plaintiff and Appellant, v.
DOVE BOOKS, INC., et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Roderick J. Lindblom and Roderick J. Lindblom for Plaintiff and Appellant.

Steven Soloway for Defendant and Respondent Michael Viner.

Novian & Novian, Farhad Novian and Susan A. Rodriguez for Defendants and Respondents Dove Books, Inc., and Dove Audio, Inc.

## OPINION

**CROSKEY, Acting P. J.**—Alexandra D. Datig (plaintiff) sued Dove Books, Inc., a California corporation (Dove Books), and several other defendants[1] on a number of theories all of which were based on the factual circumstance that she was one of several contributing authors to the book, published by Dove Books, You'll Never Make Love in This Town Again. Plaintiff alleged that she experienced both contractual problems with Dove Books and sexual harassment by Viner, a corporate principal, officer and director.

Plaintiff's action was dismissed after defendants, on October 23, 1996, obtained an ex parte order from the Honorable Paul G. Flynn dismissing the action for plaintiff's alleged failure, after defendants' demurrer was sustained with 20 days' leave to amend, to file an amended complaint on or before October 21, 1996. Plaintiff was not present at the hearing on the ex parte application, and there is no evidence that plaintiff received proper notice. In fact, plaintiff had filed her amended complaint on October 21, 1996. When defendants, after being informed of such fact, would not stipulate to vacate the judgment, plaintiff filed a motion to vacate the judgment. The motion was heard by the Honorable Haley J. Fromholz who tentatively decided to grant it; however, at the hearing, he was persuaded by defendants' counsel to continue the matter to a date to be announced later, so that Judge Flynn could hear and rule upon plaintiff's motion.

Thereafter, plaintiff filed a notice of appeal both from the order sustaining the demurrer, and from the judgment following the order of dismissal. Because we have concluded that (1) it was obtained without notice or any excuse for the lack of notice, and (2) there was no factual basis for its entry, we reverse the judgment. In addition, due to the egregious behavior by which defendants' attorneys sought to retain the benefits of the judgment to which they knew they were not entitled, we remand with directions to the trial court to consider and award appropriate sanctions against defendants and/or their counsel for violation of relevant local rules of the trial court.

---

[1] The other defendants sued by plaintiff were Dove Audio, Inc., a California corporation (Dove Audio); Michael Viner, an individual (Viner); Maheu Associates; and Peter Maheu, an individual (Maheu) (collectively defendants).

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Plaintiff's Pleadings and Defendants' Demurrers*

On March 1, 1996, plaintiff filed her original complaint against defendants. The complaint contained 10 causes of action: (1) breach of written contract, (2) libel, (3) fraud and deceit, (4) intentional misrepresentation, (5) negligent misrepresentation, (6) intentional interference with prospective economic advantage, (7) breach of the covenant of good faith and fair dealing, (8) sexual harassment in a business relationship, (9) intentional infliction of emotional distress, and (10) negligent infliction of emotional distress. The allegations of the complaint set forth the following factual matters.[2]

Dove Books and Dove Audio are corporations in which the unity of interest in ownership is such that any individuality and separateness between the two has ceased to exist. Dove Books, which is inadequately capitalized, is merely the alter ego of Dove Audio, and was used by Dove Audio as a shell or conduit through which Dove Audio carried out its business. For purposes of plaintiff's complaint, Dove Books and Dove Audio will be referred to collectively as Dove. Viner is a principal, officer and director of Dove.

On or about June 23, 1995, plaintiff, as an author, entered into a written publishing agreement (the Agreement) with Dove, as publisher, as to a literary work tentatively entitled You'll Never Make Love in This Town Again. This work was to be the compilation of the true-life experiences in Hollywood of several women authors. On or about September 15, 1995, plaintiff and Dove entered into an amendment to the written agreement (the Amendment).

Paragraph 81 of the Agreement provided that Dove would give plaintiff a set of galley proofs before the work was published, which plaintiff was to return within 21 days.[3] On or about January 1996, only six months after entering into the Agreement with plaintiff, Dove Books published a book,

---

[2]Because this appeal follows the sustaining of a demurrer, certain of these facts are taken from the plaintiff's complaint, allegations which are assumed to be true for purposes of a demurrer. Other facts, such as those related to the procedural issues presented by this appeal, are taken from the record, from the parties' declarations and pleadings, and from admissions made by counsel at oral argument.

[3]Specifically, paragraph 81 provides that the author was to return the galley proofs with her corrections within 21 days of receiving such proofs, and that if the author failed to timely return the proofs, the publisher could publish the literary work "without the Author's approval of the proofs—provided, however, that if, because of illness or any other factor beyond his or

and Dove Audio released an audio book on tape, entitled, You'll Never Make Love in This Town Again, by Robin, Liza, Linda and Tiffany. Plaintiff believes that the Tiffany portion of the book was being credited to her. The Tiffany portion of the book was attached to the complaint as an exhibit and incorporated by reference. Such portion indicated that "Tiffany" had worked as a call girl for Heidi Fleiss,[4] and, in addition to engaging in acts of prostitution, had supplied clients with illegal drugs, and had been involved in Ms. Fleiss's being prosecuted and convicted.

Dove did not provide plaintiff with any sets of galley proofs before publishing the book and audio book. Dove also did not use the majority of plaintiff's literary work in You'll Never Make Love in This Town Again, but claimed that it had, and that it was therefore entitled to assert the rights and restrictions accorded to it pursuant to the amended Agreement. On February 11, 1996, Dove's director of business affairs, Doug Field, wrote plaintiff a letter to reiterate that Dove Audio had the exclusive right to represent her with respect to all publicity arising out of the book/video documentary, and that as a result, she was not allowed to grant any press, media, or any other form of interview without Dove's prior written consent.

By failing to give plaintiff the galley proofs for review before publication, and by failing to use the majority of plaintiff's literary work in the published book, but, exercising their rights under the amended Agreement as though they *had* used the majority of plaintiff's literary work, defendants breached the amended Agreement, causing plaintiff a minimum of $50,000 in damages.

The published book contained a disclaimer stating that the publisher had made every effort to ensure the accuracy of the work in question, that its authors, including Tiffany, had taken polygraph tests as to the veracity of their stories, and that the authors' accounts had been verified by Peter Maheu of Maheu Associates, a private investigation firm. According to the disclaimer, although two names had been changed, all of the information in the book was accurate, to the best of the editors' and publisher's knowledge. According to plaintiff, Tiffany's portion of the book is libelous on its face, because, among other things, it states that plaintiff's current profession is that of a call girl and attributes to plaintiff sexual encounters which did not occur, statements being made to plaintiff by others which were not made,

---

her control, the Author informs the Publisher that he or she is unable so to return the corrected proofs, his or her time for correcting such proofs shall be extended for another 21-day period, and after that period the Publisher may publish the Literary Work without the Author's approval of the proofs."

[4] A woman who had received a considerable amount of media attention as a result of allegations that she had operated a prostitution ring in Los Angeles.

and statements made by plaintiff which plaintiff did not make. As a result of these untrue statements in the book, plaintiff had been damaged in the minimum amount of $1 million.

In November 1995, plaintiff made repeated requests to see the edited drafts of her portion of the literary work, but defendants never complied with these requests. On January 8, 1996, plaintiff asked for an advance copy of the book, not having ever seen a draft of her portion. Defendants did not comply with this request. On January 22, 1996, plaintiff purchased a copy of the book from a bookstore, and discovered for the first time that Tiffany's portion of the book was only loosely based on the work done by plaintiff, and that more than 50 percent of the statements attributed to plaintiff were never made by plaintiff. This caused plaintiff to believe that before entering into the Agreement with her, defendants had falsely, and with the intent to deceive, represented to plaintiff that the bulk of the Tiffany portion of the book would be based on plaintiff's work, and promised her that the Tiffany portion would be based on the truth as stated by plaintiff. However, she alleges that defendants never intended to perform the terms of the amended Agreement, but only made these representations, and failed to disclose other material facts, in order to induce her to enter into the Agreement and the Amendment. If plaintiff had known the truth, she would not have entered into the Agreement nor given defendants her work, and as a result of defendants' misrepresentations, plaintiff claims to have been damaged in the amount of at least $1 million.

Plaintiff had enjoyed a successful professional reputation in her business relationships in the entertainment industry, including but not limited to, existing business relationships with other publishers, editors and producers in the industry, and had accrued goodwill and trust in connection therewith. Defendants were aware of this, and made their false representations to plaintiff in order to prevent her from entering into an agreement regarding her work with any other party, and in order to destroy her professional reputation and her business relationships in the entertainment industry. This caused damage to plaintiff in the amount of at least $1 million.

In fact, in reliance on oral representations made to her by Viner in the previous two months, plaintiff had broken off negotiations with other publishers and third parties interested in her work, and had stopped pursuing her other business opportunities to concentrate on preparing her work for presentation to Dove. Because of her reliance on Viner's representation, she was placed in serious financial difficulties. Dove delayed in preparing the promised written Agreement, which was to be accompanied by a $5,000 advance. On or about June 26, 1995, plaintiff was told the written Agreement had been drafted. She went with her attorney to Dove's offices to

review it before signing. Plaintiff was told that Viner did not want her to bring legal counsel, and that if she wanted to close the deal at all, her attorney would have to leave and not participate in the final negotiations. Because of the two-month delay in the negotiations, plaintiff was in a desperate financial situation, and needed the $5,000 to cover her expenses. Therefore, she met with Viner herself and executed the Agreement to get the $5,000. By demanding that she attend the negotiations without her attorney, defendants breached the implied covenant of good faith and fair dealing in the Agreement, causing plaintiff at least $50,000 in damages.[5]

From May 1, 1995, through February 1, 1996, there was a continuing business relationship between Dove and Viner as publisher, and plaintiff, as a Dove-contracted author, which involved meetings and interviews by plaintiff with Viner and other Dove representatives about plaintiff's literary work. At various times during these meetings, Viner sexually fondled plaintiff and forcibly kissed her against her will, and continuously asked her to engage in sexual activities. Other Dove representatives falsely accused plaintiff of having sexual relations with Viner and other "known personalities," and repeated these accusations to third persons, to plaintiff's distress. When it was apparent that plaintiff would not accede to his demands for sex, Viner began to verbally insult plaintiff using derogatory sexual terms.

During this time, defendants knew that plaintiff was economically dependent on Dove. As a result of defendants' sexual harassment of plaintiff, she claims to have been damaged in an amount of at least $1 million. Furthermore, pursuant to Civil Code sections 51.9 and 52, she alleges entitlement to attorney fees if she should prevail on her sexual harassment cause of action.

Defendants demurred to all causes of action and also moved to strike certain portions of the complaint. On June 18, 1996, defendants' demurrer to the complaint was sustained, with 30 days' leave to amend, as to all 10 causes of action. On July 18, 1996, plaintiff filed her verified first amended complaint (FAC). The FAC contained these additional relevant allegations of fact.

Pursuant to the Agreement and Amendment, plaintiff was to deliver her portion of the literary work to Dove, and Dove had the sole discretion to use it or not. However, if Dove chose not to publish plaintiff's work, the rights

---

[5]Although plaintiff's complaint does not explicitly so allege, it is apparent that the subject matter of the parties' negotiations was a topic of current, but undoubtedly ephemeral, public interest—the activities of Heidi Fleiss and her employees. It is easily inferable that an author whose stock in trade is based on her ties to this kind of nonfiction (i.e., "pop" topic), as opposed to an ongoing literary effort or ability to write marketable popular fiction, such as romance novels or mysteries, will be much more vulnerable to such deceptive strategies.

to the work reverted to plaintiff. Not only did plaintiff submit a written manuscript, but she also participated in several taped interviews with Dove's collaborators.

Defendants demurred to all causes of action in the FAC, and on October 1, 1996, Judge Flynn, who was sitting in department 20 (Superior Court, Los Angeles County), sustained the demurrer *without* leave to amend as to the following five causes of action: (1) breach of written contract, (4) intentional misrepresentation, (5) negligent misrepresentation, (7) breach of the covenant of good faith and fair dealing, and (8) sexual harassment in a business relationship. Judge Flynn also sustained the demurrer *with* 20 days' leave to amend as to the following 5 causes of action: (2) libel, (3) fraud and deceit, (6) intentional interference with prospective economic advantage, (9) intentional infliction of emotional distress, and (10) negligent infliction of emotional distress. Plaintiff had until October 21, 1996, to file her new pleading.

On October 21, 1996, plaintiff apparently filed her verified second amended complaint (SAC), because there is a filed-stamped copy of that pleading *with that filing date* in the record.[6] This SAC contained three causes of action for (1) rescission of written contract based on fraud in the inducement; (2) rescission of written contract based on lack of consideration; and (3) for reasonable value of services rendered. The facts in the SAC were much the same as those in the earlier complaints. In addition, plaintiff alleged that on or about May 8, 1995, she had entered into negotiations with Dove for a publishing agreement regarding You'll Never Make Love in This Town Again, that on that date and on numerous occasions thereafter, Viner, on behalf of Dove, represented that plaintiff would be paid at least $100,000 cash at the time of signing, plus industry standard royalties pursuant to the terms of the publishing agreement that would be drafted by Dove and entered into by plaintiff and Dove. Viner also told plaintiff that she would have approval of the final contents of the published literary work. In reliance on these representations, plaintiff ceased negotiations with other publishers, and thereby lost a cash advance she otherwise would have received from one of these other publishers. When Viner made these representations, he knew

---

[6]At oral argument, Mr. Steven Soloway, counsel to Viner on appeal, and counsel to Dove and Viner below, continued to imply that plaintiff had not really filed her SAC on October 21, 1996. However, he admitted he had undertaken no investigation to try to establish whether or not plaintiff had forged the file stamp on the SAC. When asked why he believed the file stamp was forged, all Mr. Soloway could say was that it looked "different" than the other file stamps. We assume that Mr. Soloway could have checked the court's docket entries if he really thought the file stamp was forged; it is difficult to imagine how plaintiff's counsel could have falsified the court's original docket entry. It is serious business to insinuate that an officer of the court has forged an official file stamp. Obviously, such an accusation should be based on convincing evidence, not something as insubstantial as that it looked "different."

that they were false, and he made them to induce plaintiff to enter into the Agreement with Dove. Viner knew Dove did not intend to allow plaintiff to review galley proofs before publication, and knew she would not be paid any amount above $20,000 in cash at the time of signing. Plaintiff had had no reason to think that Viner was lying to her.

On June 23, plaintiff, accompanied by her attorney (who later represented her both at trial and on appeal), went to Dove's offices to negotiate the final language and details of the Agreement. Dove had refused to provide plaintiff with a tentative copy of the Agreement before this meeting. Plaintiff had told Viner on several occasions that she was destitute and about to be evicted, and that she had ceased negotiations with other publishers in reliance on Dove's promises to provide her with a $100,000 advance. When she and her attorney arrived, she was told her attorney could not be present. When plaintiff protested, she was told she would get nothing and be sent away if she insisted on having her attorney present. Plaintiff's attorney then left, and plaintiff, Viner, and Mr. Soloway, Dove's in-house counsel, presented plaintiff with an agreement that provided no royalties and a total payment of $20,000, $5,000 at the time of signing. Out of financial desperation, and having ceased negotiations with other publishers, and due to confusion and apprehension as a result of her attorney's "forcible exclusion," plaintiff signed the Agreement.

Based on the success of the book, plaintiff would have received at least $100,000 in industry standard royalties by the date she filed her complaint. Service of the SAC constituted notice of rescission and an offer to restore the benefits she had received.

As to the Amendment to the Agreement, that Amendment purported to deprive her of certain rights under the Agreement, including the right to review and approve galley proofs. The Amendment also provided that it was the publisher's sole right to exploit the material in any manner it saw fit, and that if plaintiff violated any obligations under the Amendment, she would lose her reversion rights. Plaintiff received no consideration for this Amendment, and therefore it should be null and void.

Within the past 18 months, plaintiff rendered work, labor and services to defendants, at defendants' request, and defendants agreed to pay plaintiff for the reasonable value of her services. The reasonable value of such services were $100,000, plus standard industry royalties.

2. *Defendant's Ex Parte Motion to Dismiss*

On October 23, 1996, at 8:45 a.m., Mr. Soloway, acting on behalf of the defendants, filed and caused to be heard, in department 20 by Judge Flynn,

an ex parte application to dismiss plaintiff's action for failure to file an amended complaint by October 21, 1996. The record reflects that Mr. Soloway did not give notice of his ex parte application to plaintiff's counsel. Judge Flynn granted the application, and entered judgment on that same date. On October 24, 1996, defendants served a notice of entry of judgment on plaintiff and also filed a request for $42,661 in attorney fees and costs pursuant to Civil Code sections 51.9 and 52, and section 1717. *Notably, as discussed below, and as admitted by Mr. Soloway at oral argument, at the time he made application for fees and costs based on the judgment he had obtained without notice to plaintiff, he knew that, in fact, plaintiff had timely filed the SAC on October 21, 1996.* In addition, on October 24 or 25, defendants *also* filed a $25 million malicious prosecution lawsuit against plaintiff and her attorney, alleging that plaintiff's lawsuit had caused Dove's stock to drop from $13 to $2.50. Obviously, defendants would not have been entitled to file an action for malicious prosecution if there had not been a judgment terminating plaintiff's lawsuit in favor of defendants—and, given that Mr. Soloway knew he had obtained the judgment by representing to Judge Flynn something which turned out not to be true, Mr. Soloway also must have realized that the foundation for malicious prosecution lawsuit was not valid.

On October 25, 1996, at 11:00 a.m., plaintiff notified Mr. Soloway that, in fact, she had filed the SAC on October 21, 1996, and *Mr. Soloway admitted he had received the SAC.*[7] At Mr. Soloway's request, plaintiff's counsel sent a facsimile copy of the conformed face page of the SAC to Mr. Soloway at 11:55 a.m., and asked him to stipulate to vacate the judgment, given that the SAC had been filed on October 21, 1996. Mr. Soloway refused to agree to either voluntarily vacate the judgment or to stipulate to vacating it, even after receiving the conformed copy of the SAC's face page.

On October 28, 1996, plaintiff filed an application for an ex parte order for the trial court to take judicial notice of its files and vacate the judgment and for sanctions against defendants' attorney, or, alternatively, for an order shortening time for service of a motion for an order to vacate the judgment. According to this application, plaintiff was forced to bring the application, which he accurately characterized as being "unnecessary, costly and wasteful," because of Mr. Soloway's refusal to agree to vacate the judgment.

It is not clear what happened to this application, but on October 28, 1996, plaintiff also filed a motion, to be heard on November 13, 1996, to set aside

---

[7]At oral argument, in response to this court's direct question, Mr. Soloway grudgingly admitted he had received the SAC on October 23, 1996. This was after he returned from obtaining entry of the judgment.

and vacate the judgment on two grounds: (1) the judgment was entered as a result of a "clerical error" after defendants misled the court into believing the SAC had not been filed by October 21, 1996, and (2) plaintiff had received no notice of the ex parte hearing at which judgment was entered.

On November 6, 1996, defendants filed an *opposition* to this motion, and asked for *sanctions* against plaintiff and her attorney, although their attorney, Mr. Soloway, knew that (1) the judgment had been entered based on Judge Flynn's belief that the SAC had not been filed on October 21, 1996, and (2) he had a copy of the conformed SAC with a file-stamp date of October 21, 1996. Opposition to the motion to set aside the judgment also contained what was essentially a demurrer to the SAC's causes of action, because defendants argued that in order to be entitled to relief under Code of Civil Procedure section 473, plaintiff had to show she had a meritorious case. It also raised as a *new* basis upon which the judgment should not be vacated: that plaintiff had not timely *served* the SAC on October 21, 1996.

On November 13, 1996, plaintiff's motion to vacate the judgment was heard by Judge Fromholz, who was then sitting in department 20. Mr. Soloway was present at the November 13, 1996, hearing. At oral argument, Mr. Soloway admitted that he had not told Judge Fromholz that he had, albeit unintentionally, misled Judge Flynn by representing that plaintiff had not timely filed her SAC. Despite defendants' counsel's failure to acknowledge that he had obtained the judgment by incorrectly representing that plaintiff had not filed her SAC by October 21, 1996, Judge Fromholz's minute order appears to initially *grant* plaintiff's motion to vacate the judgment. It then, curiously, continued the matter, *at defendants' request*, so that Judge Flynn could hear it.[8] The order provides that "counsel are to be notified by the clerk of this court as to the date and time of hearing." There is no indication in the record that the clerk ever gave notice of the continued date.[9]

---

[8]Thus, the minute order's reference to a "grant" of the motion must be deemed to be a *tentative* ruling only.

[9]In addition to this battle over the pleadings, plaintiff and defendants were also engaged in a discovery dispute. Plaintiff had noticed the deposition of Deborah Raffin (Raffin), Viner's wife and an officer and director of Dove Audio. When Raffin did not attend the deposition, plaintiff brought a motion to compel her attendance. Defendants opposed the motion. The trial court denied the motion to compel pursuant to *Liberty Mutual Ins. Co.* v. *Superior Court* (1992) 10 Cal.App.4th 1282 [13 Cal.Rptr.2d 363], concluding that plaintiff had failed to make the requisite showing.

On December 2, 1996, plaintiff filed a notice of appeal from the October 1, 1996, order sustaining defendants' demurrer.[10] On December 23, 1996, plaintiff filed a notice of appeal from the judgment entered on October 23, 1996.

## CONTENTIONS ON APPEAL

Plaintiff contends the trial court erred by entering the judgment against her because her SAC was timely filed, and because she did not receive notice of the ex parte application. She also contends that the trial court erred by sustaining defendants' demurrer without leave to amend as to her fourth, fifth, seventh and eighth causes of action, and by denying her motion to compel the deposition testimony of Raffin.

Defendants dispute these contentions, and contend that the "default" judgment should not be set aside because the "proposed" SAC contains fatally defective causes of action, and contains completely new and inconsistent causes of action that exceed the scope of permissible amendment. They also contend that the causes of action in the earlier versions of the complaint were properly dismissed.

## DISCUSSION

### 1. *The Trial Court Erred by Granting Defendants' Ex Parte Application to Dismiss Plaintiff's Action*

■  California Rules of Court, rule 379, subdivisions (a) and (b), provides that ex parte applications shall not be made unless the party applying has given all other parties a minimum of 24 hours' notice of the time and place the application will be made, absent a showing of exceptional circumstances. A declaration of notice, including the date, time, manner and name of the party informed, any response, and whether opposition is expected, or a declaration stating the reasons why notice should not be required, must accompany every request for an ex parte order. The applicant must make an affirmative factual showing in a declaration, based on personal knowledge, of the irreparable harm, immediate danger, or any other statutory basis for granting ex parte relief rather than setting the matter for a hearing on noticed motion. (Cal. Rules of Court, rule 379(e).) Furthermore, the applicant must serve the ex parte application on all other appearing parties at the first

[10]This was not an appealable order. (*Forsyth* v. *Jones* (1997) 57 Cal.App.4th 776, 780 [67 Cal.Rptr.2d 357].)

reasonable opportunity, and, absent exceptional circumstances, no hearing shall be conducted unless such service has been made. (Cal. Rules of Court, rule 379(f).)

Here, defendants' attorney failed to establish that he had given plaintiff's attorney the minimum 24 hours' notice required. The hearing on the ex parte application was set for October 23, 1996, at 8:45 a.m. According to defendants' attorney's declaration, "On October 22, 1996, I attempted to telephone Plaintiff's counsel, Roderick J. Lindblom, at least five times. I left one message with the receptionist and also left at least two messages on his voice mail. As of 5:30 p.m. today, I have neither received any amended pleading nor, for that matter, even a return phone call." Notably, defense counsel did not state the content of the messages which he claims to have left. Plaintiff's counsel swore that the only two voice mail messages defendants' attorney left for him were simply "Rod, this is Steve Soloway, can you call me, thanks."

Furthermore, the declaration fails to state the time at which the messages were left. To have been given the minimum of 24 hours' notice, plaintiff would have to have received notice no later than 8:45 a.m. on October 22, and such notice is not established. In addition, defense counsel failed to make an affirmative factual showing in his declaration, based on personal knowledge, of the irreparable harm, immediate danger, or any other statutory basis upon which he sought ex parte relief rather than setting the matter for a hearing on noticed motion as required by California Rules of Court, rule 379(e).[11]

Finally, defense counsel was required to serve the ex parte application on plaintiff's counsel at the first reasonable opportunity, and, absent exceptional circumstances, no hearing should have been conducted unless such service had been made. (Cal. Rules of Court, rule 379(f).) The record contains no proof of service of the ex parte application on plaintiff's attorney before the hearing. There is no indication of exceptional circumstances which might have justified holding the hearing in the absence of such service. Although Weil and Brown, California Practice Guide: Civil Procedure Before Trial (The Rutter Group 1998) paragraph 11:277.4, pages 11:112 to 11:113, revision #1, 1999, suggests that "informal" notice to opposing counsel is not required, citing *Wilburn* v. *Oakland Hosp.* (1989) 213 Cal.App.3d 1107,

[11]We realize that rule 325(f) provides that "[a] motion to dismiss the entire action and for entry of judgment after expiration of the time to amend following the sustaining of a demurrer may be made by ex parte application to the court under section 581(f)(2) of the Code of Civil Procedure." But this does not negate the notice requirements imposed by rule 379 on one who makes an ex parte application.

1110-1111 [262 Cal.Rptr. 155], and Code of Civil Procedure section 581, subdivision (f)(2), neither authority supports this suggestion. Section 581, subdivision (f)(2) provides that a court may dismiss a complaint as to a defendant when, "after a demurrer to the complaint is sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court and either party *moves* for dismissal" (italics added); in *Wilburn, supra,* the issue was whether an action could be dismissed without a noticed motion, not without any notice at all.[12] What happened in this case, and the tremendous waste of time and judicial resources it represents, is a paradigm example both of why notice is necessary, and of the salutary effect the judicial system obtains by requiring such notice before taking action under circumstances in which hearing both sides may be useful.[13]

Was plaintiff prejudiced by the failure to either give her adequate notice of the ex parte application or to proceed by way of noticed motion? Yes. The only ground for defendants' ex parte application was that plaintiff had failed to file her amended complaint within the 20 days allowed. It would have been a simple and relatively inexpensive matter to oppose the application or

---

[12]In *Wilburn,* the plaintiff was served with notice of the ex parte application to dismiss the action for failure to timely amend on November 20, 1987, filed an opposition to the application on November 23, 1987, and the order granting the application was filed on December 2, 1987. In other words, the plaintiff in *Wilburn* received notice and was able to respond to the application. Furthermore, in *Wilburn* some *10 months* had passed from the time the plaintiff had been given 60 days' leave to amend his complaint, a circumstance which prompted the appellate court to conclude that "[t]he [trial] court was entitled to dismiss the complaint without a noticed motion." Here, of course, the record reflects that plaintiff had in fact made a timely filing. And, of course, it is a fact of which we can take judicial notice that the Los Angeles Superior Court is busy, understaffed and overworked and that a pleading filed on one day may not be placed in the appropriate file for several days—hence the advisability of obtaining conformed copies when one files documents.

[13]Another paragraph from Weil and Brown, California Practice Guide: Civil Procedure Before Trial, *supra,* paragraph 7:150 at pages 7-51 to 7-52, cites *Sadler* v. *Turner* (1986) 186 Cal.App.3d 245, 250 [230 Cal.Rptr. 561] for the proposition that a dismissal may be obtained by ex parte application with neither formal nor informal notice to the plaintiff. In *Sadler,* an opinion of this court, the defendant filed an ex parte application for an order to dismiss plaintiff's complaint for failure to amend almost two months after the date upon which the plaintiff was to have filed and served an amended complaint. That application was granted. On appeal, the plaintiff contended that he was entitled to at least 15 days' written notice of a motion to dismiss pursuant to California Rules of Court, rule 325(f). We held that he was not, because rule 325(f), which purported to require a formal noticed motion, was in conflict with Code of Civil Procedure section 581, subdivision (c), which had been interpreted to require only the request of a party for dismissal, not a formal noticed motion.

Notably, in *Sadler* we were not presented with the question of whether such a request, if made by way of ex parte application, could be made with no notice at all, even the minimal notice required by California Rules of Court, rule 379 upon ex parte application. Rule 379, which requires such minimal notice, is not in conflict with Code of Civil Procedure section 581, subdivision (c), nor with any other applicable code section, and therefore its requirements are valid. Thus, there is no conflict between our decision in *Sadler* and our holding here.

the motion by simply presenting a conformed copy of the timely filed SAC.[14] Instead, plaintiff was denied the right to present her side of the issue as to whether the SAC had been timely filed. Furthermore, even if plaintiff's SAC had been *untimely* filed, once defense counsel knew it had been filed before the date he sought an ex parte dismissal, he would have been required to bring a noticed motion to strike the SAC before seeking to have the action dismissed. (*Gitmed* v. *General Motors Corp.* (1994) 26 Cal.App.4th 824, 827-828 [31 Cal.Rptr.2d 625].) In addition, once Mr. Soloway, on October 23, 1996, received service of the amended complaint, it was incumbent upon him to notify the trial court that, in fact, there was an SAC on file (see pt. 2 of this opn., *post*), and to then proceed by way of noticed motion—to strike, for dismissal, or to demur, whatever type of motion might be applicable. (26 Cal.App. 4th at p. 829.)

Defendants contend that plaintiff, by filing a notice of appeal, somehow waived any error the trial court made by granting the ex parte application for entry of judgment. Under the peculiar circumstances presented here, we do not agree. Plaintiff first sought a stipulation from defendants to set aside the judgment, given that the SAC was timely filed. When defendants would not stipulate, plaintiff brought a motion to vacate the judgment. Plaintiff's motion was tentatively granted, but, inconsistent with the proposed order, the matter was continued to a date *not* certain. Given that the judgment was entered on October 23, 1996, and notice of entry was mailed on October 24, 1996, and that there was no formal order vacating the judgment, a reasonable attorney would have filed a notice of appeal from that judgment before the judgment became final. Here, plaintiff did exactly that on December 23, 1996. ▮ In any event, a party can appeal from a judgment following an order of dismissal without bringing a motion. (*Gitmed* v. *General Motors Corp., supra,* 26 Cal.App.4th at p. 829.)

[14]It was only later, when plaintiff attempted to have the judgment vacated, that defendants insinuated, in their opposition to the motion to vacate, that the second amended complaint had not been served within the 20-day period, by pointing out that (1) the original proof of service by mail filed with the court, though it stated that service was made on October 21, 1996, was not signed, (2) the proof of service stated it was personally delivered, but defendants received it in the mail on October 23, 1996, and (3) the date on the postage meter tape was not canceled and the date-stamped portion had been "mysteriously ripped off." However, (1) the fact that original proof of service was not signed did not make the proof of service invalid (*City of Petaluma* v. *White* (1907) 152 Cal. 190, 195 [92 P. 177]; *Pacific States S. & L. Co.* v. *Hoffman* (1933) 134 Cal.App. 604, 606 [25 P.2d 1007]; Code Civ. Proc., § 1013a); (2) defendants gave no factual basis in Mr. Soloway's declaration for the assertion that the SAC was not personally delivered to them on October 21, 1996; (3) although defendants asserted that they had attached a copy of the postage meter tape in question as an exhibit to their assertion of its suspicious nature, they did not do so, and, in any event, if a postage cancellation date or postage meter date is only one day later than the date of deposit on the proof of service, service is still presumed valid (Code Civ. Proc., § 1013a, subd. (3)); and (4) given defendants' admission that they received the second amended complaint in the mail on October 23, 1996, there is no reason to assume that service was not timely.

### 2. *Defense Counsel Failed to Do His Duty as an Officer of the Court and Acted in Direct Violation of the Trial Court's Local Rules*

██ Business and Professions Code section 6068 provides, in relevant part: "It is the duty of an attorney to do *all* of the following: [¶] . . . [¶] (b) *To maintain the respect due to the courts of justice and judicial officers.* [¶] (c) To *counsel or maintain such actions*, proceedings, or *defenses* only as appear to him or her legal or just, except the defense of a person charged with a public offense. [¶] (d) To *employ*, for the purpose of maintaining the causes confided to him or her *such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.*" (Italics added.)

Further, the Rules of Professional Conduct require that a member of the State Bar "[s]hall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law." (Rules Prof. Conduct, rule 5-200(B).) ██ " '*Honesty* in dealing with the courts is of paramount importance, and *misleading a judge is, regardless of motives, a serious offense.*' " (*Paine* v. *State Bar* (1939) 14 Cal.2d 150, 154 [93 P.2d 103], italics added; see also *Di Sabatino* v. *State Bar* (1980) 27 Cal.3d 159, 162-163 [162 Cal.Rptr. 458, 606 P.2d 765]; *Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 917 [180 Cal.Rptr. 831, 640 P.2d 1106].) "Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, *the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.*" (*Furlong* v. *White* (1921) 51 Cal.App. 265, 271 [196 P. 903], italics added.)

██ While Mr. Soloway's ex parte application for entry of judgment left much to be desired in that it failed to detail how it was he could be sure no SAC had been filed by October 21, 1996, and it failed to set forth facts showing he had complied with the notice requirements of California Rule of Court, rule 379, it is not this behavior which we find may be a violation of his duty as an officer of the court. Instead, it is (1) his failure, once he had direct evidence that the SAC *had* been timely filed, to stipulate to the vacation of the judgment which he had obtained on the sole ground that it had *not* been timely filed; (2) his subsequent active reliance on what he then knew to be a judgment obtained on the basis of a misrepresentation to the court, to (a) seek additional relief against plaintiff, to wit, an award of attorney's fees and costs, and (b) file and maintain an action for malicious prosecution against plaintiff and her attorney; and (3) his opposition to plaintiff's motion to vacate the judgment, at a time when he was fully aware that a factual misrepresentation to Judge Flynn was the *sole* basis for entry of that judgment.

At oral argument, it was apparent that Mr. Soloway did not feel that he had done anything wrong. ██ We therefore find it is necessary to state,

explicitly, that although a misrepresentation to the court may have been made negligently, not intentionally, it is still a misrepresentation, and once the attorney realizes that he or she has misled the court, even innocently, he or she has an affirmative duty to immediately inform the court and to request that it set aside any orders based upon such misrepresentation; also, counsel should not attempt to benefit from such improvidently entered orders. As the court stated in *Furlong* v. *White,* an attorney has a duty not only to tell the truth in the first place, but a duty to *"aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice."* (51 Cal.App. at p. 271, italics added.) Observance of this duty, we might add, prevents the waste of judicial resources, and the opposing party's time and money.

We also note that in addition to their possible violation of the above noted statewide rules, defense counsel also appear to have disobeyed the command of important local rules, the violation of which may form the basis for an award of sanctions.[15] Superior Court of Los Angeles County Rules, rule 7.12(j)(2) and (j)(3), provides that "Even where applicable laws or rules permit an ex parte application or communication to the court, before making such an application or communication, a lawyer should make diligent efforts to notify the opposing party or a lawyer known to represent or likely to represent the opposing party and should make reasonable efforts to accommodate . . . the opposing party to be represented on the application," and "Where the rules permit an ex parte application or communication to the court in an emergency situation, a lawyer should make such an application or communication (including an application to shorten an otherwise applicable time period) only where there is a bona fide emergency such that the lawyer's client will be seriously prejudiced by a failure to make the application or communication on regular notice." Here, as noted above, Mr. Soloway's efforts to notify plaintiff's counsel of his intentions (calling plaintiff's counsel and leaving a message for him to call back is not notice of anything) were scarcely diligent. More to the point, there was no emergency situation which necessitated making an ex parte application without having successfully notified opposing counsel.[16]

It appears that defense counsel also violated the spirit, if not the letter, of other local rules. Superior Court of Los Angeles County Rules, rule

---

[15]Code of Civil Procedure section 575.2, subdivision (a) and Superior Court of Los Angeles County Rules, rule 7.13 provide for the imposition of sanctions for failure to comply with the local rules. We note Code of Civil Procedure section 575.2, subdivision (b) provides that "[i]t is the intent of the Legislature that if a failure to comply with these rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto."

[16]We note that one inference which *could* be drawn from the totality of these events (including Mr. Soloway's action in refusing to agree to vacate the judgment and, in particular, his filing of the malicious prosecution action against plaintiff *after* he learned that the SAC appeared to have been timely filed) is that, by making an ex parte application without notice

7.12(b)(4) provides that papers should be served in a manner designed to prevent prejudice to the opposing party. Thus, Mr. Soloway should have at least attempted to serve his ex parte application on plaintiff's counsel by personal delivery or facsimile transmission. As noted above, there is no evidence that *any* attempt at service of these papers was made before the hearing. In addition, rule 7.12(*l*)(2) provides that counsel should always treat others, including opposing counsel, with courtesy and civility. Thus, when plaintiff's counsel faxed a copy of the conformed face sheet of the SAC to Mr. Soloway, and asked him to agree to stipulate to vacate the judgment, courtesy and civility required Mr. Soloway to respond and raise any concerns he had about the authenticity of the file stamp with plaintiff's counsel, so that perhaps this issue could have been resolved without court intervention, instead of remaining mute and forcing plaintiff's counsel to bring his own ex parte application for relief.

Finally, Superior Court of Los Angeles County Rules, rule 7.12(b)(3) provides that "Papers should not be served in order to take advantage of an opponent's known absence from the office or at a time or in a manner designed to inconvenience an adversary, . . ." As noted above, Mr. Soloway apparently did not bother to serve his ex parte application on plaintiff's counsel. Although this rule speaks in terms of the service of papers, when counsel does not even serve written notice of an ex parte application, it would seem that the spirit of this particular rule would require an ex parte application hearing should not be set in order to take advantage of opposing counsel's known absence from his or her office.

Violation of statewide rules of court and/or local rules is sanctionable by payment of the opposing party's reasonable expenses and counsel fees. (Cal. Rules of Court, rule 227.)[17] Furthermore, use of sanctions against both attorneys and clients has been commended by our Supreme Court as an

---

to opposing counsel so soon after the date the SAC was to be filed, Mr. Soloway took advantage of the fact that, in the Los Angeles Superior Court, and in most other trial courts, a filed document may not appear in the court file for several days, and that he did so as part of a plan to obtain some public relations and/or economic advantage for his client, making public the dismissal of plaintiff's lawsuit and the filing of a multimillion-dollar action against her.

[17]Rule 227 provides: "The failure of any person to comply with these rules, local rules, or order of the court, unless good cause is shown, or failure to participate in good faith in any conference those rules or an order of the court require, is an unlawful interference with the proceedings of the court. The court may order the person at fault to pay the opposing party's reasonable expenses and counsel fees and to reimburse or make payment to the county, may order an appropriate change in the calendar status of the action, and for failure to comply with local rules may impose sanctions authorized under section 575.2 of the Code of Civil Procedure and under section 68608(b) of the Government Code, in addition to any other sanction permitted by law."

Unless they transcend legislative enactments, the rules of practice and procedure adopted by the judicial council have the force of law. (*People* v. *Hall* (1994) 8 Cal.4th 950, 960 [35

appropriate method for dealing with unjustified litigation. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 873-874 [254 Cal.Rptr. 336, 765 P.2d 498].) ▇▇ Based on our review of this record, it appears that defense counsel violated several statewide rules of court and local rules, and that these violations resulted in unnecessary litigation and cost to plaintiff and her attorney in time and money. We therefore remand this matter to the trial court to consider, and, if appropriate, award sanctions against defendants and/or their attorneys and in favor of plaintiff.

### 3. *We Need Not Reach the Merits of the Plaintiff's Appeal as to the Order Sustaining the Demurrers*

Having determined that the judgment entered on October 23, 1996, was improperly obtained, because (1) the ex parte application did not establish that plaintiff had not filed an amended complaint by October 21, 1996, and (2) the ex parte application did not comply with the prerequisites for such applications, in other words, actual notice to the opposing party or a good excuse for not giving such notice, we need not address the other issues raised by the parties. In other words, we do not reach the question of whether plaintiff's earlier causes of action, or the causes of action in the SAC, actually stated viable causes of action or not.[18] That is a matter properly addressed to the trial court in the first instance, which court could conclude that even if the causes of action in the SAC did not state facts sufficient to state a cause of action, they were still susceptible to further amendment.[19]

---

Cal.Rptr.2d 432, 883 P.2d 974]; *Paul D.* v. *Superior Court* (1984) 158 Cal.App.3d 838, 841 [205 Cal.Rptr. 77]; *Alsavon M.* v. *Superior Court* (1981) 124 Cal.App.3d 586, 594 [177 Cal.Rptr. 434]; *Cantillon* v. *Superior Court* (1957) 150 Cal.App.2d 184, 187 [309 P.2d 890]: "Article VI, section 1a, of the California Constitution, creates a Judicial Council and vests in it the power to 'Adopt or amend rules of practice and procedure for the several courts not inconsistent with laws that are now or that may hereafter be in force.' Under this constitutional grant of power, it is well settled that the rules of practice and procedure adopted by the Judicial Council, including such rules as have been adopted under specific statutory mandate, and which do not transcend legislative enactments, have the force of positive law. [Citations.]") We are unaware of any legislative enactments which are contrary to rule 227's provision for an award of attorney fees as a sanction for violation of the rules of court or local rules.

Thus, the trial court here has the power, pursuant to rule 227 (as well as under Code Civ. Proc., § 575.2), to award plaintiff her attorney fees as sanctions for defense counsel's violations of statewide and/or local court rules. (Cf. *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634 [150 Cal.Rptr. 461, 586 P.2d 942].)

[18]We sympathize with the dilemma of plaintiff's counsel in briefing this case on appeal, and understand why he felt it necessary to fully brief these other issues, given that he had no way of knowing how we would deal with the procedural issue raised by the circumstances surrounding entry of the judgment.

[19]Defendants also contend that plaintiff improperly alleged new causes of action. However, defendants cite no authority for the proposition that a plaintiff given leave to amend may not

### 4. *The Order Denying the Motion to Compel a Deposition Is Not an Appealable Order*

The order denying the motion to compel Raffin's deposition is not an appealable order. (*Lund* v. *Superior Court* (1964) 61 Cal.2d 698, 709 [39 Cal.Rptr. 891, 394 P.2d 707]; *Huenergardt* v. *Huenergardt* (1963) 218 Cal.App.2d 455, 458 [32 Cal.Rptr. 714].) Nor is such an order subsumed in the judgment from which the appeal was taken. Therefore, we do not address that portion of the appeal.

### DISPOSITION

The judgment is reversed and remanded with directions to the trial court to consider and, if appropriate, award sanctions against defendants and/or their counsel and in favor of plaintiff; the trial court is also directed to conduct further appropriate proceedings not inconsistent with the views expressed herein. Plaintiff is awarded her costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied August 13, 1999, and the opinion was modified to read as printed above.

---

attempt to plead causes of action based on a new theory of recovery, e.g., rescission rather than breach of contract, when the action is still in the early pleading stages. (See, e.g., *Pruitt* v. *Fontana* (1956) 143 Cal.App.2d 675, 682-683 [300 P.2d 371] ["The governing rule is that where leave to amend is granted, plaintiff is not precluded from adding a new cause of action which supports recovery upon the original obligation sued upon under a different legal theory"]; *Wood* v. *DeLuca* (1963) 211 Cal.App.2d 507, 510-514 [27 Cal.Rptr. 388].)

In addition, defendants contend that, having initially pleaded a cause of action for breach of contract, plaintiff may not now amend her complaint to plead a cause of action for rescission. There is nothing inherently wrong with pleading a cause of action for rescission of a contract after one has pleaded a cause of action for breach of the contract. "A party should be entitled to change alternative remedies until satisfaction of judgment, or application of res judicata or estoppel, vindicates one of the inconsistent rights. [Citation.] The election of remedies doctrine states that [it is the acceptance of] an actual benefit from an alternative theory that renders continued pursuit of the alternative unfair and constitutes an election." (*Smith* v. *Golden Eagle Ins. Co.* (1999) 69 Cal.App.4th 1371, 1375-1376 [82 Cal.Rptr.2d 300]; *General Ins. Co.* v. *Mammoth Vista Owners' Assn.* (1985) 174 Cal.App.3d 810, 828 [220 Cal.Rptr. 291].)