Filed 4/24/15  Wade v. Valdez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

SCOT ROSS WADE et al.,

    Plaintiffs and Appellants,

v.

JACOB ANTHONY VALDEZ et al.,

    Defendants and Respondents.

E059880

(Super.Ct.No. MCC1300324)

OPINION

APPEAL from the Superior Court of Riverside County.  Richard J. Oberholzer* and Thomas A. Peterson,† Judges.  Affirmed in part; reversed in part.

Law Offices of Jay R. Taylor and Jay Robert Taylor for Plaintiffs and Appellants.

---

\* Retired judge of the Kern Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

† Retired judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1

Berman Berman Berman Schneider & Lowary, Mark Lowary and Howard Smith for Defendant and Respondent Canyon Lake Property Owners Association.

No appearance for Defendant and Respondent Jacob Anthony Valdez.

No appearance for Defendant and Respondent Robyn Valdez.

No appearance for Defendant and Respondent PBK Golf Services, LLC.

Plaintiffs and appellants Scot Ross Wade and Scot Tyler Wade[1] sued defendants and respondents Canyon Lake Property Owners Association (CLPOA), which owns and operates a golf course, and others for personal injuries arising out of a shooting at the golf course. CLPOA demurred to the causes of action against it, which were for premises liability and general negligence. Although the court sustained the demurrer, it allowed plaintiffs 20 days to file an amended pleading. When plaintiffs declined to avail themselves of this opportunity, CLPOA filed an ex parte application to dismiss the complaint. (Code Civ. Proc.[2], § 581, subd. (f)(2) (§ 581(f)(2)).) It gave no notice of the application to plaintiffs. The court granted CLPOA's ex parte request and dismissed the entire action as to not only CLPOA, but also all other parties. Shortly thereafter, the trial court entered judgment in favor of CLPOA.

---

[1] Scot Tyler Wade is the minor son of Scot Ross Wade. The minor proceeds in this action through his father, who acts as guardian ad litem.

[2] Unless otherwise specified, all statutory references are to the Code of Civil Procedure.

On appeal, plaintiffs argue the trial court committed prejudicial error when it sustained the demurrer, granted the ex parte application without notice to plaintiffs,[3] and dismissed the action against parties other than CLPOA.  We disagree with the first two premises and affirm the judgment as to CLPOA.  However, because we agree that dismissing the complaint as to defendants other than CLPOA was erroneous, we remand for further proceedings as to those parties.

## FACTUAL[4] AND PROCEDURAL BACKGROUND

The injuries for which plaintiffs seek to recover damages occurred on the 17th hole of the golf course owned by CLPOA.  Located on private property adjacent to the 17th hole is an area known as the "17th Hole Hideout," which "contains some trees and shrubs that served to conceal persons who congregate" there.  Frequent trespassers had left old couches and other furniture, as well as other "makeshift seating" and trash in the 17th Hole Hideout.  "The area was known prior to the incident by the golf marshals, employees of PMK Golf Services,[5] employees of AlliedBarton Security Services,[6]

---

**3** Plaintiffs first argued this point in their reply brief, and we granted CLPOA's application to file a letter brief in which it argues that no notice of the ex parte application was required.  Because CLPOA has had an opportunity to be heard, we consider the merits of plaintiffs' notice argument even though it was not made until the reply.

**4** We derive our factual summary from the facts alleged in the complaint, which we assume to be true for purposes of reviewing the order sustaining the demurrer.  (See, e.g., *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1371 (*Alfaro*).)

**5** This defendant contracted with CLPOA to "provide safety and golf marshall [*sic*] services, pro shop services, and tee time administrative services."

3

police investigators, and . . . members of the community as a location where trespassing, illegal activity, loitering, drugs, illegal discharging of firearms, and bad behavior occurred frequently."

Despite this advance knowledge, CLPOA and the other defendants that owned the real property on and around the golf course failed to repair the fence between the 17th hole of the golf course and the 17th Hole Hideout, the purpose of which "was specifically to prevent trespassers from accessing the Hideout from the golf course, and vice versa," in order to "keep [plaintiffs] safe." The disrepair of the fencing allowed defendants Jacob Valdez and Ryan Allard to traverse the fencing and lie in wait for golfers on March 11, 2012, the day of plaintiffs' injuries. Other golfers informed employees of PMK Golf Services that someone was discharging firearms on the golf course, but no golf marshal was on duty because the shots occurred after 4:00 p.m., which is when the marshals stopped providing services under the work schedule CLPOA had approved for PMK Golf Services. In any event, even if some had been present, CLPOA's policy was to have AlliedBarton Security Services call for assistance instead of intervening in any criminal activity.

On the day of the incident, plaintiffs were playing golf on the 17th hole. No one warned them about Valdez's and Allard's illegal discharging of firearms; in fact, "[n]othing was done" to remedy the dangerous conditions of which CLPOA had notice.

---

**6** CLPOA hired this nonparty to provide unspecified security services.

4

This was true even though an AlliedBarton security guard witnessed Valdez and Allard firing a weapon; because of CLPOA's policy, he could do no more than call the pro shop.

Twenty minutes or more after the pro shop received complaints about the shooters, Valdez, using a firearm owned by Allard, shot Scot Ross Wade in the wrist in the presence of his minor son. Plaintiffs accuse CLPOA of breaching duties owed to them by failing to install adequate fencing or to maintain it once installed, failing to provide adequate security guards, and failing to give the security guards who were present authority to act. They also assert that the breaches of all defendants, such as failing to guard against trespassers, caused plaintiffs' injuries.

The complaint pleads causes of action for intentional tort against Valdez and Allard, premises liability against CLPOA and other owners of real property on or near the golf course, general negligence against Valdez, Allard and CLPOA, and statutory liability against the parents of Valdez, who was a minor when the shooting occurred. It also requests punitive damages from CLPOA for consciously and recklessly disregarding plaintiffs' rights.

CLPOA generally demurred (§ 430.10, subd. (e)) to the second and third causes of action for premises liability and general negligence on the theory that plaintiffs had failed to adequately plead the elements of duty, breach, or causation. When plaintiffs failed to file an opposition at least nine court days before the hearing (§ 1005, subd. (b)), CLPOA filed a notice of nonopposition. The day before the hearing, plaintiffs filed an objection to the notice of nonopposition in which they, among other things, argued the complaint

5

was pled well enough to survive demurrer because it sufficiently alleged that CLPOA owed a duty to protect them from the shooters.

The trial court refused to consider any opposition by plaintiffs to the demurrer on the ground that it was tardy. It sustained the demurrer but allowed 20 days' leave to amend.

Plaintiffs' time to amend expired on August 14, 2013. On September 17, 2013, CLPOA filed an ex parte application for dismissal in which it explicitly asserted that no notice of the application needed to be provided to plaintiffs. It appears[7] the trial court agreed, as it granted the application without requiring proof of service on plaintiffs. The minute order from this hearing states: "Complaint of WADE dismissed." In addition, the trial court docket reflects that all parties have been dismissed from the action.

## ANALYSIS

Plaintiffs contend the trial court committed prejudicial error in sustaining the demurrer because they adequately alleged all essential elements of their causes of action against CLPOA. We disagree and discern no error because plaintiffs' allegations regarding causation are insufficient. Plaintiffs also argue the trial court erred in dismissing the action on an ex parte application of which they received no notice, but their claim fails because, even if it was error to proceed with the hearing on the ex parte application without any kind of notice, plaintiffs failed to explain how the lack of

---

[7] We say, "It appears," because the transcript from the hearing on CLPOA's ex parte application is not part of the record on appeal.

6

warning caused them any actual prejudice. However, we agree with plaintiffs that the trial court erred in dismissing all parties from the action when only CLPOA demurred.

1. *Standard of review*

" 'In evaluating a demurrer, we assume the truth of all material facts properly pleaded in the complaint unless they are contradicted by facts judicially noticed (Code Civ. Proc., §§ 430.30, subd. (a), 430.70; [citation]) but no such credit is given to pleaded contentions or legal conclusions. [Citations.]' " (*Alfaro*, *supra*, 171 Cal.App.4th at p. 1371.) We then examine " 'whether the plaintiff has alleged sufficient facts to justify any relief, notwithstanding superfluous allegations or claims for unjustified relief.' " (*Ibid.*)

Plaintiffs' claims that the trial court incorrectly interpreted rules regarding notice of ex parte applications to dismiss an action for failure to amend a complaint after the sustaining of a demurrer with leave to amend, and that section 581(f)(2) prohibited the dismissal of any defendants other than CLPOA, present questions of law. Therefore, we exercise our independent judgment when analyzing these issues. (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1497-1498.)

However, even when engaging in independent review, we "will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. [Citations.]" (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) Moreover, this court will not "act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial." (*Ibid.*)

7

2. *The trial court properly sustained the demurrer*

Although the trial court dismissed the action in response to CLPOA's ex parte application instead of as a direct response to the demurrer, the opening brief argues the merits of the ruling on the demurrer but not the merits of the court's decision on the ex parte application. The respondent's brief contends plaintiffs' failure to address the ex parte application "is fatal to the instant appeal." If what CLPOA means is that the order on the demurrer is somehow nonappealable, we disagree. "When plaintiffs decline to amend a complaint, as this court has explained, they have 'clearly elected to stand on the . . . complaint [that was the subject of the demurrer] and may challenge the court's ruling on that cause of action on an appeal from the subsequent dismissal of their action.' [Citation.]" (*Alfaro*, *supra*, 171 Cal.App.4th at p. 1372.) We therefore consider the merits of the order sustaining CLPOA's demurrer.

"When a trial court grants a plaintiff leave to amend, but the plaintiff elects not to do so, 'it is presumed that the complaint states as strong a case as is possible [citation]; and the judgment of dismissal must be affirmed if the unamended complaint is objectionable on any ground raised by the demurrer. [Citations.]' (*Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452,457.) Accordingly, ' "[w]e do not consider the possibility that any defects in it could be cured by amendment. . . ." ' (*Ibarra v. California Coastal Com.* (1986) 182 Cal.App.3d 687, 692.)" (*Holcomb v. Wells Fargo Bank, N.A.* (2007) 155 Cal.App.4th 490, 495-496.)

8

Premises liability and general negligence, the two causes of action alleged against CLPOA, share the same well-known essential elements: duty, breach, causation and damages. (*McIntyre v. Colonies-Pacific, LLC* (2014) 228 Cal.App.4th 664, 671.) If plaintiffs inadequately pled any of these elements, then their causes of action against CLPOA fail and the demurrer was properly sustained. (See, e.g., *Giacometti v. Aulla, LLC* (2010) 187 Cal.App.4th 1133, 1137 [pleading fails to state cause of action if essential element is missing].)

In this case, the parties spend much of their discussion arguing about whether CLPOA owed a duty to protect plaintiffs from the shooting or whether any cognizable breaches of that duty occurred. We, however, need not and do not resolve those issues, because we find the trial court properly found that the complaint failed to properly allege a causal relationship between CLPOA's alleged breaches of duty and plaintiffs' injuries.

Causation can be generically alleged when the facts of a cause of action for negligence "show plainly the connection between cause and effect." (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 78 (*Bockrath*).) "But when, by contrast, ' "the pleaded facts of negligence and injury do not naturally give rise to an inference of causation[,] the plaintiff must plead specific facts affording an inference the one caused the others." ' (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 900-901.) That is, the plaintiff must allege facts, albeit as succinctly as possible, explaining how the conduct caused or contributed to the injury. (*Ibid.; Dunn v. Dufficy* [(1924)] 194 Cal. [383] at p. 386; see also *Tucker v. Cooper* (1916) 172 Cal. 663, 668, 158 P. 181 [permitting a

9

plaintiff to 'allege[] in sequence a series of facts and circumstances which . . . establish the causation between the . . . act of the defendant . . . and the injury'].)" (*Bockrath*, *supra*, 21 Cal.4th at pp. 78-79, omissions in original; see also *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1120 [accord].)

In this case, plaintiffs assert that the shooting could have been prevented had defendants adequately guarded against trespassers, but they fail to allege facts showing how. In fact, the only specific allegation plaintiffs make regarding causation is the following sentence: "But for Defendants[' CLPOA and others] failure to exercise reasonable care, such as failing to adequately safeguard the Plaintiffs from being exposed to trespassers, the injuries to the Plaintiffs would not have occurred." The complaint does not explain why Valdez and Allard would not have been able to reach plaintiffs with their firearm had they not been able to traverse the broken fence and gain access to the golf course, why a warning about firearm activity would have ensured that plaintiffs were in a place where they could not be shot, or why a call to the police would have stopped the shooting of Scott Ross Wade, which happened only 20 minutes after other golfers informed an AlliedBurton Security Services. Without support from factual allegations of this type, plaintiffs' allegation regarding causation is a legal conclusion we need not accept as true on demurrer.

At oral argument, plaintiffs asserted that *Bockrath* is distinguishable because it was a complicated action alleging 55 defendants had manufactured toxic products to which he was exposed during his employment, causing cancer. (*Bockrath*, *supra*, 21

10

Cal.4th at p. 77.) According to plaintiffs, general allegations of causation should suffice in this case, which involves far fewer defendants and injuries that have a far simpler cause than the toxic chemical exposure alleged in *Bockrath*. We disagree. Plaintiffs allege an injury caused by the aiming and shooting of a firearm in their direction. They fail to explain why maintaining the fence that separated the 17th Hole Hideout from the golf course would have prevented the shooters from reaching them with the firearm. For example, no facts are alleged showing that the shooters could only get within range of plaintiffs if they traversed the fence, that the fence was so tall as to prevent a person from firing a weapon over it, or that any other reason existed why the shooters could not have simply fired over the top of the fence. In fact, the complaint fails to specify that the shooters did not, in fact, aim over the fence from the side that was not owned by the golf course. Consequently, causation in this case is more complicated than plaintiffs acknowledge, such that the *Bockrath* pleading rule applies.

For these reasons, we find that plaintiffs' generic allegations regarding causation are insufficient. The trial court therefore properly sustained CLPOA's demurrer.

3. *No prejudicial error occurred when the trial court declined to require notice of the ex parte application*

CLPOA does not dispute that it gave no notice of the ex parte application to dismiss the complaint to plaintiffs; it argues instead that no such notice was required. Plaintiffs disagree and insist the trial court lacked the authority to grant CLPOA's dismissal request without notice.

11

California authorities are in conflict regarding whether notice of an ex parte application to dismiss a complaint after a demurrer has been sustained with leave to amend but no amended pleading has been filed.  (Cf. *Sadler v. Turner* (1986) 186 Cal.App.3d 245, 250 (*Sadler*) [request for dismissal after failure to amend need not be made by way of noticed motion]; *Wilburn v. Oakland Hospital* (1989) 213 Cal.App.3d 1107, 1110 (*Wilburn*) [citing *Sadler* for the proposition that "no notice was required on an ex parte application to dismiss after failure of the other party to amend after sustaining of a demurrer"]; *Oppenheimer v. Deutchman* (1955) 132 Cal.App.2d Supp. 875, 879 (*Oppenheimer*) [no notice required because the party whose pleading was challenged by demurrer had already had the opportunity for a full hearing]; *Gitmed v. General Motors Corp.* (1994) 26 Cal.App.4th 824, 828-829 ["Generally speaking, [the rule from *Wilburn*, *Sadler*, and *Oppenheimer*] is a correct statement of law," although this rule should not apply when an amended pleading has been served before the filing of an ex parte application to dismiss for failure to amend]; with *Datig v. Dove Books, Inc.* (1999) 73 Cal.App.4th 964, 977-978 (*Datig*) [party seeking ex parte dismissal for failure to amend must give notice of the ex parte application in accordance with the Cal. Rules of Court regarding ex parte applications, at least when an amended pleading has been filed]; Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2014) ¶ 9:354.7 [noticed motion not required to obtain dismissal after failure to amend, but, under *Datig*, party seeking ex parte dismissal for failure to amend must give "informal notice" of ex parte application in accordance with Cal. Rules of Court, rule 3.1203].)  We need

12

not resolve this controversy because, even if the trial court's failure to require notice of the ex parte application was erroneous, plaintiffs have not shown that they were prejudiced thereby.

In the trial court, plaintiffs failed to meaningfully oppose the demurrer, received leave to amend anyway, but then declined to exercise that option. In the trial court and in this court, they have offered no reason for these decisions and no excuse for failing to file an amended pleading within the time set by the court, which expired on August 14, 2013. CLPOA waited over a month to file its ex parte application for dismissal, but plaintiffs had still not amended their complaint. Because the time to amend had expired, plaintiffs "no longer had an unfettered right to file an amended complaint" but were instead required to file a motion for leave to amend under subdivision (a)(1) of section 473. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612-613; cf. *Harlan v. Department of Transportation* (2005) 132 Cal.App.4th 868, 874-875 [contra].) Since plaintiffs had lost the absolute right to amend, we are hard-pressed to see what difference notice of the ex parte application could have made.

Moreover, plaintiffs' appeal contends not that the trial court abused its discretion in granting the ex parte application to dismiss, but that it erred when it sustained the demurrer. Since it appears plaintiffs had nothing to argue but that the trial court erroneously sustained the demurrer, and since we concluded that the demurrer was properly sustained in the first instance, we see no prejudice to plaintiffs in proceeding with the ex parte application even though the lack of notice to plaintiffs deprived them of

13

the opportunity to be heard, because the only arguments they were likely to make would have been futile.

4.   *The trial court erred in dismissing parties other than CLPOA*

Plaintiffs' sole remaining contention is that the trial court erred in dismissing the action even to those defendants who had not demurred.  CLPOA makes no attempt to defend this portion of the trial court's rulings.[8]  With plaintiffs' final argument, we agree.

Section 581(f)(2) allows a dismissal when:  "(2) Except where Section 597[9] applies, after a demurrer to the complaint is sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court and either party moves for dismissal."  However, such a dismissal is authorized only "as to that defendant."  (§ 581, subd. (f).)  Here, only CLPOA demurred, but the trial court dismissed all parties.  This act exceeded the authority vested in the trial court by section 581(f)(2).  We therefore reverse the order dismissing parties other than CLPOA and remand for further proceeding against the other defendants.[10]

---

[8]  The reply brief accuses CLPOA of "mak[ing] the bald assertion that no error was made by the trial court in dismissing the entire action with prejudice, as to all of the Defendants."  We find no such assertion, bald or otherwise.  All CLPOA indicated was that the dismissal of the other defendants "has no bearing on the outcome of [p]laintiffs' appeal *as to CLPOA*."  (Italics added.)

[9]  Section 597 pertains to trial of special defenses asserted in an answer.  It therefore has no application here.

[10]  The reply brief adds an accusation that counsel for CLPOA made affirmative misrepresentations to the court in conjunction with the ex parte application and then refused to cooperate in ameliorating the harm that occurred.  However, all plaintiffs actually allege is that counsel refused to stipulate to setting aside the dismissal of the

*[footnote continued on next page]*

14

## DISPOSITION

The judgment is affirmed as to CLPOA.  We reverse the judgment as to defendants other than CLPOA and remand for further proceedings as to these parties.

Respondent Canyon Lake Property Owners Association is to recover costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

]

RAMIREZ
P. J.

We concur:

HOLLENHORST
J.

MILLER
J.

---

other defendants unless plaintiffs agreed to waive their right to bring this appeal. Because our order of remand will accomplish the result plaintiffs desired, we need not make findings about whether CLPOA's attorney misbehaved or what the remedy, if any, might be if he did.