[No. F037387. Fifth Dist. Dec. 2, 2002.]

RONALD M. ELICECHE, Plaintiff and Appellant, v.
FEDERAL LAND BANK ASSOCIATION OF YOSEMITE et al.,
Defendants and Respondents.

## COUNSEL

Tamera Cone Trindade for Plaintiff and Appellant.

Dutra & Oates and Gloria M. Oates for Defendants and Respondents.

## OPINION

**BUCKLEY, J.**—This is the fourth appeal taken by Ronald M. Eliceche in his efforts to prevent or set aside the 1989 foreclosure sale of real property he had pledged as security for a loan from the Federal Land Bank Association of Sacramento (FLBS), now known as the Western Farm Credit Bank (WFCB).[1] Eliceche filed suit on the eve of the sale challenging its legality and seeking on this basis to recover damages and to enjoin the Bank from proceeding. The court, however, allowed the sale to go forward. The Bank acquired the property, then filed an unlawful detainer action to eject Eliceche. The court entered judgment for the Bank, Eliceche appealed, and we affirmed the judgment in 1993. (*Western Farm Credit Bank v. Eliceche* (Jan. 25, 1993, F015128) [nonpub. opn.].)

Activity then resumed in Eliceche's surviving action against the Bank, by which he now sought to recover damages and to set aside the foreclosure sale. The Bank demurred to the complaint, the court sustained the demurrers with leave to amend, and Eliceche amended the complaint a total of four times during the remainder of 1993. He filed the fourth amended complaint in December. In a series of rulings that followed in 1994, the court sustained the Bank's demurrers to three of Eliceche's seven causes of action without leave to amend, granted judgment on the pleadings as to three more, and granted summary judgment as to the last. Eliceche filed two appeals challenging the dismissal of all seven causes of action. We consolidated the appeals. In an opinion filed in 1997, we affirmed the dismissal of five causes of action, and reversed as to the other two: for breach of contract and for fraud. (*Eliceche v. Federal Land Bank Assn.* (June 4, 1997, F021042 &

---

[1] It appears the loan was administered by a third organization known as the Federal Land Bank Association of Yosemite (the Association), and in particular by a senior vice-president of the Association named Richard Piper. Eliceche named the Association as a defendant in the present action, along with the FLBS, the WFCB, and Piper. We will refer to all four collectively as the Bank.

F023269) [nonpub. opn.].)[2] The remittitur issued on August 4, and was filed in Merced County on August 12, 1997.

 ▬▬ This last date, August 12, 1997, started two statutory limitations periods to run: the two-year *discretionary* dismissal period in section 583.420, subdivision (a)(3)(C) of the Code of Civil Procedure, and the three-year *mandatory* dismissal period in section 583.320, subdivision (a)(3) of the same code.[3] We are concerned here with events in the months just before the third anniversary following the remittitur.

After permitting the Bank to proceed on shortened notice, the trial court granted the Bank's motion for discretionary dismissal (§ 583.410) at a hearing on July 21, just 18 days short of the date set for trial on August 8, 2000. On appeal, Eliceche challenges the court's order shortening time for notice of the dismissal hearing. We will conclude the order was permissible and appropriate under the circumstances, and on that basis we will affirm the order of dismissal.

---

[2]Eliceche, in what he represents in his opening brief is a summary of our opinion, states as fact what were merely the allegations he made in his fourth amended complaint in support of his causes of action for breach of contract and fraud. However, we reached no conclusions in our opinion regarding the truth of these allegations. We therefore grant the Bank's motion to strike this portion of the brief.

[3]Except as noted, all further statutory citations refer to the Code of Civil Procedure.

Section 583.410 permits a court in its discretion to dismiss an action for delay in prosecution "if to do so appears to the court appropriate under the circumstances of the case." Section 583.420, referring to this discretionary dismissal, provides in part: "(a) The court may not dismiss an action pursuant to this article for delay in prosecution except after one of the following conditions has occurred: [¶] . . . [¶] (3) A new trial is granted and the action is not again brought to trial within the following times: [¶] . . . [¶] (C) If on appeal an order granting a new trial is affirmed or a judgment is reversed and the action remanded for a new trial, within *two years* after the remittitur is filed by the clerk of the trial court." (Italics added.)

Section 583.320, referring to mandatory dismissal, provides in part: "(a) If a new trial is granted in the action the action shall again be brought to trial within the following times: [¶] . . . [¶] (3) If on appeal an order granting a new trial is affirmed or a judgment is reversed and the action remanded for a new trial, within *three years* after the remittitur is filed by the clerk of the trial court." (Italics added.)

A hearing on a demurrer, a motion for judgment on the pleadings, or a motion for summary judgment, when it is followed by a judgment of dismissal, constitutes a "trial" for purposes of these two statutes. (*McDonough Power Equipment Co. v. Superior Court* (1972) 8 Cal.3d 527, 530-533 [105 Cal.Rptr. 330, 503 P.2d 1338] [former § 583, subd. (b)]; see also *Misic v. Segars* (1995) 37 Cal.App.4th 1149 [44 Cal.Rptr.2d 100] [analyzing what constitutes a "trial" for purposes of § 583.320 and concluding a default judgment does not]; *Finnie v. District No. 1—Pacific Coast Dist. etc. Assn.* (1992) 9 Cal.App.4th 1311 [12 Cal.Rptr.2d 348] [concluding a dismissal for lack of subject matter jurisdiction is a "trial"].)

FACTUAL AND PROCEDURAL BACKGROUND

As we have said, Eliceche does not take issue with the court's order dismissing his lawsuit for lack of prosecution, except insofar as the order was made at a hearing held on shortened notice. He argues: (1) the court lacked authority to shorten the 45-day notice period on a motion for discretionary dismissal (Cal. Rules of Court, rules 372 & 373);[4] (2) the Bank failed to follow the proper procedure for making an ex parte application for an order shortening time (rule 379); and (3) the court abused its discretion by granting the application because it left Eliceche without sufficient time to prepare his opposition to the dismissal motion.

Thus, except to say that very little of any consequence happened in this case prior to the events we are about to describe, we need not set out in any detail what Eliceche did or did not do to bring his case to trial following the remittitur, nor discuss his activities in light of the factors the court was required to consider in ruling on the motion to dismiss. (See rule 373(e); *Dubois v. Corroon & Black Corp.* (1993) 12 Cal.App.4th 1689, 1696 [16 Cal.Rptr.2d 719].) We turn then to the circumstances surrounding the order shortening time.

It is worth noting at the outset, for reasons that will become clear later on, that the case was filed in *Merced County* but, after all the judges in that county were disqualified or recused themselves, the case was assigned to Judge John W. DeGroot, who sat in the *Madera County* Superior Court. The parties stipulated the pretrial proceedings would be held in that court, and they could file their pleadings there as well. Some were filed in Madera County and some were filed in Merced County. We will specify which county when the distinction is important.

On April 4, and again on April 11, 2000, Eliceche filed a form request for a trial setting conference. On both forms, he checked a box indicating his case was entitled to preference. On the first, by way of explanation, he cited section 36 and wrote "over 70 yrs old." On the second, he wrote "*Diligence Statute*."[5] By this second notation, Eliceche was requesting preferential trial

---

[4] All further citations to rules refer to the California Rules of Court.

[5] Section 36 provides in part: "(a) A party to a civil action who is over the age of 70 years may petition the court for a preference, which the court shall grant if the court makes all of the following findings: [¶] (1) The party has a substantial interest in the action as a whole. [¶] (2) The health of the party is such that a preference is necessary to prevent prejudicing the party's interest in the litigation. [¶] . . . [¶] (e) Notwithstanding any other provision of law, the court may in its discretion grant a motion for preference served with the memorandum to set or the at-issue memorandum and accompanied by a showing of cause which satisfies the

setting in view of the fact his case would become subject to mandatory dismissal after August 12, 2000 (which was 123 days hence).[6]

In both requests for a trial setting conference, Eliceche estimated the trial would take 16 days and indicated he was seeking general and special damages of $15 million and $6 million, respectively.

On May 3, the court clerk notified the parties a trial setting conference had been scheduled for July 10. In a letter dated May 9, Eliceche's attorney, Tamera Trindade, asked the court to reset the conference for an earlier date "as soon as possible," because, if it were to proceed as scheduled, the parties then would have less than 30 days' notice of the trial date.[7] In response, the clerk rescheduled the trial setting conference for June 26. Following the conference, the court administrator set the case for trial on August 8, 2000, some 42 days later.[8]

According to a declaration later filed by the Bank's attorney, Gloria Oates, she objected to the court clerk at the June 26 trial setting conference "to the advanced trial setting, . . . to [Eliceche's] failure to show good cause for the Trial Setting Conference being advanced, . . . and . . . to the August 8, 2000 trial date on the grounds of prejudice and surprise." The clerk reportedly told her to take up her objections with the judge. And so she did.

On June 30, the Bank filed both a motion for discretionary dismissal and an ex parte application for an order shortening time to hear the motion.[9] It proposed to hold the dismissal hearing on July 21, to require Eliceche's

court that the interests of justice will be served by granting this preference. [¶] (f) Upon the granting of such a motion for preference, the clerk shall set the matter for trial not more than 120 days from that date . . . ."

[6]Rule 375(b) provides in part that "[a] motion to advance, reset, or specially set a case for *trial* shall not be granted, except on notice, the filing of a declaration showing good cause, and the appearance by the moving party at the hearing on the motion." (Italics added.) Eliceche's request failed to comply with this rule in several respects.

[7]Rule 374 provides in part that "[a] motion to continue, advance, reset, or specially set a *trial setting conference* . . . shall not be granted, except on notice, the filing of a declaration showing good cause, and the appearance by the moving party at the hearing on the motion." (Italics added.) Eliceche's letter failed to comply with this rule in several respects.

[8]As a general rule, every case in which a trial setting conference is held must be assigned a trial date no less than 30 days thereafter. (Rule 218.) Moreover, the court clerk must give the parties at least 90 days' written notice of the trial date. (Rule 221 [applying to counties with nine or fewer judges].) However, both these time periods may be shortened to avoid a dismissal under section 583.110 et seq., "or for other good cause shown on noticed motion."

[9]As we will discuss below, a dispute exists about when the Bank actually filed and served the dismissal motion and the application for shortened time. The two documents were file stamped on July 10. But the Bank's application for shortened time included the following assertion: "As set forth in the Declaration of Gloria M. Oates [attorney for the Bank] filed herewith, the Defendants caused all of the moving papers to be served by facsimile

opposition to the motion be filed and served no less than 10 days prior to the hearing (i.e., July 11), and to require any reply be filed no less than five days prior. The Bank relied on section 1005 as authority for shortening time.[10]

In support of its application for shortened time to hear the dismissal motion, the Bank stated in part: "Defendants have just learned that a key defense witness died, and the Defendants have filed the [dismissal] motion as soon as possible after learning that fact. Further, because the trial was set on less than 42-days notice, the Defendants have been prejudiced in preparing the case for trial, including conducting discovery and deposing the Plaintiff's yet-to-be disclosed experts. The Plaintiff has refused to stipulate to extending the discovery deadlines."

Eliceche filed no opposition to the Bank's application for shortened time. On July 10, the court, without requiring an appearance by the Bank, signed an order granting the application on the terms proposed. Thus, the dismissal motion was then set for hearing on July 21, and the case was set for trial on August 8, 2000.

On July 11, Eliceche filed a written objection "to the court taking any action based on the purported order shortening time . . . , including but not limited to hearing the [Bank's] motion to dismiss." He made essentially the same arguments he raises again here. That is, he maintained section 1005 (see fn. 10, *ante*), upon which the Bank based its application for shortened time, applies only to the specific types of proceedings listed in subdivision (a) (which list does not include a motion for discretionary dismissal), and to

transmission, and by Federal Express overnight delivery service on June 30, 2000, and the Motion for Discretionary Dismissal has a proposed hearing date of July 21, 2000. Since early in this case, the parties have been using facsimile transmission as necessary to serve time sensitive pleadings and communications."

As we discuss below, Eliceche denies the parties had any agreement or practice permitting them to serve one another by facsimile transmission.

[10]Section 1005 provides in relevant part:

"(a) Written notice shall be given, as prescribed in subdivision (b), for the following motions: [¶] . . . [listing 12 types of motions, not including a motion to dismiss under section 583.110 et seq.] . . . [¶] (13) *Any other proceeding under this code in which notice is required and no other time or method is prescribed by law or by court or judge.*

"(b) *Unless otherwise ordered or specifically provided by law,* all moving and supporting papers shall be served and filed at least 21 calendar days before the hearing. . . . [¶] *The court, or a judge thereof, may prescribe a shorter time.*" (Italics added.)

Rule 317 provides in part: "(a) Unless otherwise ordered or specifically provided by law, all moving and supporting papers shall be served and filed in accordance with Code of Civil Procedure section 1005. [¶] (b) The court, on its own motion or on application for an order shortening time supported by a declaration showing good cause, may prescribe shorter times for the filing and service of papers than the times specified in Code of Civil Procedure section 1005."

"[a]ny other proceeding under this code in which notice is required and no other time or method is prescribed by law or by court or judge." (§ 1005, subd. (a)(13).) But, Eliceche noted, rule 373 *does* prescribe the time (45 days) and method for filing a motion for discretionary dismissal, and does not expressly authorize the court to shorten time.

Eliceche also objected to the court's order shortening time on the ground the Bank failed to comply with the procedure set out in rule 379 for making an ex parte application for an order. As we discuss below, rule 379 requires, among other things, that a party seeking an ex parte order generally must notify the opposing party of when and where the applicant will personally appear to present the application to the court. Eliceche claimed the notice provided by the Bank was deficient in several particulars, the most serious among them being the Bank's failure even to make a personal appearance. Finally, he argued the notice procedure used in this case was "grossly unfair" and a violation of his right to due process.

Eliceche did not file any written opposition to the Bank's motion for discretionary dismissal (which opposition would have been due the day after the order shortening time was filed). Nor did he request additional time in which to file one.

At the dismissal hearing held on July 21, the court first considered and rejected Eliceche's objections to the order shortening time. It then granted the Bank's motion to dismiss the action based upon its findings that Eliceche had failed to offer a satisfactory explanation for his inactivity in the three years following the remittitur, and that the Bank had been prejudiced by the delay, or would be if required to go to trial on only 42 days' notice.[11] Eliceche did not contest the motion to dismiss except to argue the court lacked jurisdiction to consider it on shortened time.

---

[11]As noted, an important defense witness had died a few months earlier. Ed Wright was the Bank's loan officer responsible for the Eliceche loan when it became delinquent in 1987. Eliceche's claims against the Bank for breach of contract and fraud were based on his allegation the Bank had reneged on an oral agreement to forbear from undertaking foreclosure proceedings.

In July of 2000, soon after the trial setting conference, Eliceche's attorney, Tamera Trindade, asked the Bank's attorneys, Paul Dutra and Gloria Oakes, to stipulate to the authenticity of certain documents attached as exhibits to Wright's deposition. It seems the only other person who had attended the deposition, Eliceche's former attorney, Corey Garber, had also since died. Therefore, Trindade wrote to Oakes, if she (Oakes) would not stipulate, she (Trindade) would be forced to call Oakes and Dutra as witnesses at trial. Moreover, Trindade was careful to add, she would not limit her questioning of them to the authenticity of documents. It would be Trindade's position that Oakes and Dutra had "actively facilitated, if not participated in" the Bank's alleged fraud; that the "crime-fraud exception" would bar them from invoking attorney-client privilege to avoid testifying; and that she (Trindade) was entitled to discover their entire case file.

On October 27, 2000, the court filed a written order in *Merced County* Superior Court granting the Bank's motion to dismiss Eliceche's surviving lawsuit for want of diligent prosecution. In overruling Eliceche's objections to the order shortening time to hear the motion, the court restated its findings as follows: "that [Eliceche] had received actual notice of the [Bank's] application for an order shortening time on June 30, 2000, [Eliceche] had been given a reasonable amount of time to file any objections thereto, and having received no written opposition to the request for the matter to be heard on shortened time, the court duly entered the Order Shortening Time on July 10, 2000." Notice of entry of the order was served on Eliceche on November 6, 2000, and filed with the court on November 16.

On December 15, the court filed a written order in *Madera County* Superior Court granting the Bank's motion for costs and attorney fees totalling $177,221.70. Notice of entry of this order was served on December 21.

The two orders were incorporated into a judgment of dismissal entered in *Madera County* Superior Court in favor of the Bank on December 27, 2000. Notice of entry of judgment was served on Eliceche on January 11, and filed with the court on January 31, 2001.

On January 9, 2001 (a Tuesday), *before* he received notice of entry of judgment, Eliceche filed a notice of appeal (dated Jan. 8) in the *Merced County* Superior Court. The appeal was taken not from the judgment of dismissal but from "the Order Granting [the Bank's] Motion for Discretionary Dismissal, entered on November 6, 2000 [in *Merced County*]." Thus, Eliceche filed the appeal 61 days after service (on Nov. 6) of the notice of entry of the order (issued on Oct. 27) from which he was appealing. (See rule 2(a)(2) [notice of appeal must be filed on or before 60 days from date notice of entry is served].)

In February, in an effort to remedy the late filing, Eliceche requested the court enter an order nunc pro tunc accepting the notice of appeal as having been filed on January 5. As we will soon discuss, he maintained the notice of appeal had in fact been delivered to the clerk of the *Madera County* Superior Court on the earlier date, but the clerk had refused to accept it notwithstanding the parties' agreement their pleadings could be filed in Madera County, and their past practice of doing so. The Bank opposed the request.

Following a hearing on March 2, 2001, the court denied Eliceche's request for a nunc pro tunc order. It found the notice of appeal had indeed been received by the clerk of the Madera County Superior Court on January 5,

2001. However, the court held the notice should have been filed in Merced County, so the Madera County clerk had not erred by refusing to accept it.

The Bank subsequently filed a motion with this court requesting we dismiss the appeal as untimely. We deferred a ruling on the motion pending our consideration of the appeal on its merits. We will therefore address this issue first.

DISCUSSION

*Was the Appeal Timely?*

We begin with the well-established rule that an appeal may be taken only from a final judgment. (§ 904.1; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 57-59, pp. 113-115.) An order that is merely preliminary to a judgment is not appealable, such as an "order for judgment" or a "notice of ruling." (9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 119-122, pp. 183-188.) Thus, there is a difference between an order granting a motion to dismiss and an order of dismissal.[12] For example, in *Shpiller v. Harry C's Redlands* (1993) 13 Cal.App.4th 1177 [16 Cal.Rptr.2d 814], the court dismissed an appeal taken from "an order and 'notice of ruling' announcing" the trial court's discretionary dismissal of the appellant's cross-complaint. (*Id.* at p. 1178.) And in *Cordova v. Von's Grocery Co.* (1987) 196 Cal.App.3d 1526 [242 Cal.Rptr. 605] (*Cordova*), the court held a discretionary dismissal was effective not when it was announced by the court, but two months later upon entry of a judgment of dismissal. (*Id.* at p. 1531.)

Written orders of dismissal signed by the court and filed in the action "shall constitute judgments and be effective for all purposes." (§ 581d.) Here, the court's October 27, 2000 order concluded: "the court grants the Motion for Discretionary Dismissal. [¶] It is hereby ordered that the case shall be dismissed. [¶] IT IS SO ORDERED." The order seems to us somewhat ambiguous as to whether it is dismissing the case, or ordering that the case be dismissed by some subsequent order. It is all the more ambiguous in light of the "final judgment" the court caused to be entered on December 27, 2000, "[p]ursuant to the court's order granting the [Bank's] Motion for Discretionary Dismissal that was entered on October 27 [*sic* November 6], 2000." If the "final judgment" of dismissal was indeed the final judgment, Eliceche's appeal was timely. If, on the other hand, the

---

[12]The Bank, in its motion to dismiss the appeal, asserts that an "order granting [a] motion to dismiss is an appealable order," citing section 904.1, subdivision (a)(3). This is not correct. Section 904.1, subdivision (a)(3) applies to an order "granting a motion to stay or dismiss the action on the ground of inconvenient forum." An order of dismissal however, as opposed to an order granting a motion to dismiss, is an appealable "judgment." (§ 581d.)

November 6 order was an appealable order of dismissal, the "final judgment" was functionally superfluous, and we still must decide whether the notice of appeal was timely.

We will assume for further purposes of this discussion, as the parties do, that the 60-day appeal period began to run on November 6, 2000, when Eliceche was served with notice of entry of the October 27 order.

The parties indisputably agreed, during a hearing in this case in 1993, to file their pleadings and other documents in the Madera County Superior Court.

"THE COURT: All right. The problem is this is a Merced case and I am down here [in Madera]. Is there any objection to the Court retaining the Merced case files and you filing your documents with this court and [the] matter heard in this court?" The attorneys for the Bank and Eliceche assented to this procedure. It was reflected in the minutes of the hearing as follows: "Counsel stipulate to filing documents in Madera County." (Thus, the agreement arguably required the parties to file *all* their pleadings in Madera County.)

There is also no question but that the parties thereafter filed documents in both the Madera and Merced County Superior Courts; that neither party ever objected to the other doing so; and that the clerks of these courts never refused to accept or file the documents prior to the one we are concerned with here. In particular, the Bank filed both its motion for discretionary dismissal and its ex parte application for an order shortening time in the Madera County Superior Court. The court's order shortening time was filed in Madera County; the order granting the motion to dismiss was filed in Merced County; and the judgment of dismissal was filed in Madera County.

Finally, it is established that the clerk of Madera County Superior Court actually *received* Eliceche's notice of appeal on January 5, 2001, within the 60-day period for the appeal to be *filed*.

The Bank concedes all this, but argues Eliceche nonetheless was required to file his notice of appeal in Merced County because that is where he had filed earlier notices of appeal, and because all previous documents related to "administration of the case," as opposed to those having to do with "law and motion matters," had been filed in Merced County. This argument strikes us as disingenuous, even if the premise is true. The agreement entered in court makes no such distinction (whatever it is), and the Bank does not claim it relied on this practice to its prejudice.

Therefore, Eliceche was entitled to file his notice of appeal in the Madera County Superior Court, and the clerk of that court should have accepted it. ▮ A document is "filed" when it is actually delivered to the clerk of the court during office hours, even if the clerk erroneously refuses to file it. (*United Farm Workers of America v. Agricultural Labor Relations Bd.* (1985) 37 Cal.3d 912, 918 [210 Cal.Rptr. 453, 694 P.2d 138].) Since the notice of appeal was "filed" in Madera County on January 5, 2001, it fell within the 60-day period for appeal, and was timely. The Bank's motion to dismiss the appeal is denied.

*May a Section 583.410 Motion to Dismiss Be Heard on Shortened Notice?*

▮ A discretionary dismissal under section 583.410 must be made "pursuant to the procedure and in accordance with the criteria prescribed by rules adopted by the Judicial Council." (§ 583.410, subd. (b).) Rule 372, in turn, provides generally that the court may dismiss an action for delay in prosecution if the action has not been brought to trial within two years. The two-year period began to run in this case when the remittitur from the previous appeal was filed in the trial court on August 12, 1997. (§ 583.420, subd. (a)(3)(C).) Rule 373 sets out more specifically the procedures for filing a motion for discretionary dismissal, and provides that the motion must be filed at least 45 days before the date set for a hearing on the motion. (Rule 373(a).) The rule makes no allowance for shortening this notice period. Moreover, the provision in section 1005, subdivision (b) permitting the court to shorten time for certain types of motions, does not, according to Eliceche, apply to a section 583.410 dismissal motion. Therefore, he concludes, absent such an express authorization, the court acted in excess of its jurisdiction when it granted the Bank's ex parte application to shorten time.

His argument rests primarily on two cases. *Au-Yang v. Barton* (1999) 21 Cal.4th 958 [90 Cal.Rptr.2d 227, 987 P.2d 697] involved section 594, subdivision (a), which provides that a trial may not be held in the absence of a party unless the party seeking to proceed first proves the absent party has been given at least 15 days' notice of the trial date. The defendant in *Au-Yang* moved to advance a previously scheduled trial date. The plaintiff, although notified, did not attend a hearing on the motion. The court granted the motion at the hearing, vacated the trial date, and set the matter for a status conference. The plaintiff did not receive notice of the conference, and did not appear. At the status conference, the court set the matter for trial 14 days later (i.e., the court effectively shortened time for giving notice of the trial). The plaintiff did not appear for the trial. The court proceeded nevertheless, after finding the plaintiff had actual notice of the trial date (although the notice necessarily was less than the required 15 days). The court then entered a money judgment for the defendant.

The appellate court affirmed on the ground the plaintiff had notice of the original, *later* trial date. The Supreme Court reversed in reliance on established law holding that compliance with the 15-day notice requirement is " 'mandatory.' " (*Au-Yang v. Barton, supra,* 21 Cal.4th at p. 963; see *Bird v. McGuire* (1963) 216 Cal.App.2d 702, 713 [31 Cal.Rptr. 386] [failure to give the notice required by § 594, former subd. 1 is jurisdictional].) *Au-Yang* thus provides no real support for Eliceche's claim a court may not shorten time for notice of a motion absent express legislative authorization to do so—a proposition the court did not discuss.

The other case cited by Eliceche is *Karamzai v. Digitcom* (1996) 51 Cal.App.4th 547 [59 Cal.Rptr.2d 139]. That case involved section 1141.20, subdivision (a), which provides that "[a]n arbitration award shall be final unless a request for a de novo trial is filed within 30 days after the date the arbitrator files the award with the court." In *Karamzai,* the trial court ordered the parties to participate in judicial arbitration. The plaintiff later asked the court to continue the arbitration date. The court agreed, but added the proviso that any request for a trial de novo must be filed within *10 days* after the award. The defendants were not present when the court issued this order. The arbitrator subsequently awarded judgment for the plaintiff. At a status conference 11 days later, one of the defendants attempted to file a request for a trial de novo, but the court refused to accept it pursuant to its earlier order shortening time from 30 days to 10 days. The appellate court held this was error, and reversed.

"A trial court does not have inherent or unrestricted power to extend or shorten the time specified by the Legislature in which an act in a civil action must be done. Rather, the court has such power only to the extent granted by the Legislature. The Legislature has given trial courts broad authority to extend the time in . . . which an act must be done. . . .

"The Legislature has not granted such sweeping authority to the courts to shorten time. However, the Legislature has included specific authorizations to shorten time, or to alter time limits, in a number of individual sections which contain time limits [including section 1005]. . . .

". . . The California Rules of Court make it clear that the 30-day period [in section 1141.20, subdivision (a)] may not be extended. (Cal. Rules of Court, rule 1616(a).) There is no provision authorizing the court to shorten the time within which a party may request a de novo trial.

"From this specific prohibition against extending time, and the lack of any authorization to shorten time, we conclude that a trial court has no authority

to alter the time in which a party must file a request for a de novo trial. . . ." (*Karamzai v. Digitcom, supra,* 51 Cal.App.4th at pp. 550-551.)

The existing case law, including a decision by our Supreme Court, leads us to a different conclusion with respect to the power of a trial court to shorten time for hearing on a motion for discretionary dismissal.

To briefly review, on April 11, 2000, Eliceche filed an amended request for a trial setting conference, and for preferential trial date, in recognition of the impending three-year mandatory dismissal date 123 days later on August 12. The conference was initially set for July 10 and then, in response to a letter from Eliceche's attorney, it was advanced to June 26. On June 26, the court administrator, over the Bank's objection to both the advanced conference date and the preferential trial date, set the trial for 42 days later on August 8. Four days after the conference, on June 30, the Bank filed a motion to dismiss Eliceche's suit and an ex parte application for an order shortening time for notice of a hearing on July 21. Eliceche filed no objection to the application for shortened time. The court issued the order on July 10. On July 11, Eliceche filed written objections to the order on the same procedural grounds we consider here, but did not object to the dismissal motion on its merits. The hearing on the motion went forward as scheduled on July 21. Eliceche renewed his procedural objections. The court rejected them and then granted the Bank's motion to dismiss.

The June 26 trial setting conference deserves additional attention. It was also, in its effect if not in its name and procedural formalities, a hearing on a motion to specially set the case for trial. (§ 36, subd. (e).) In his request for the trial setting conference, Eliceche asserted he was entitled to preference because of the "diligence statute." A motion to specially set implicates the same factors that pertain to a motion to dismiss for lack of diligent prosecution. (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 560-561 [194 Cal.Rptr. 773, 669 P.2d 9] (*Wilson*).) "More specifically, a motion to specially set to avoid the bar of the [mandatory dismissal] statute raises the same issues as a motion for discretionary dismissal based on delay in prosecution," i.e., the court must consider the factors listed in rule 373(e). (*Salinas v. Atchison, Topeka & Santa Fe Ry. Co.* (1992) 5 Cal.App.4th 1, 9 [6 Cal.Rptr.2d 446].)

■ " 'In passing upon the motion for an early and preferential setting, the court was not limited to a consideration of the single fact that the [mandatory dismissal] period was about to expire but was required to view the total picture, including the dilatory action of the plaintiff, the condition of the court's calendar, the rights of other litigants, and the prejudice to the

defendant resulting from the delay. [Citations.] *The action of the court on such a motion is tantamount to action upon a motion to dismiss for failure to prosecute within the [discretionary dismissal period]; in each instance the motion is addressed to its sound legal discretion; the motivating factors in the exercise of that discretion would be pertinent to both motions*; and its decision "will be disturbed only in cases of manifest abuse." ' (Italics added.)" (*Wilson, supra,* 34 Cal.3d at p. 561, quoting *Beswick v. Palo Verde Hospital Assn.* (1961) 188 Cal.App.2d 254, 260 [10 Cal.Rptr. 314].)

Once the date for trial is set, the clerk of the court is required to give "at least 90 days' notice by mail of the time and place of trial to all parties . . . unless . . . the court orders the time shortened to prevent a dismissal under [section 583.110 et seq.] . . . ." (Rule 221.) But, of course, it was no longer possible at the June 26 trial setting conference to give 90 days' notice of the trial because the trial date was only 42 days away, and the mandatory dismissal date just a few days beyond that. Thus, the setting of the trial for August 8 was essentially a decision (by the assistant court administrator) to specially set the case for trial solely on the basis the mandatory dismissal period was about to run, and without any consideration of the factors relevant to a motion for discretionary dismissal.

It was likewise impossible at that point for the Bank to give 45 days' notice of a hearing on a motion to dismiss. (Rule 373(a).)

"[T]he very purpose of the lengthy notice period provided for in rule 203.5(a) [now rule 373] proves that it was not meant to apply to a motion to dismiss which follows a hearing on motion to specially set." (*Wilson, supra,* 34 Cal.3d at p. 561, citing *Farrar v. McCormick* (1972) 25 Cal.App.3d 701 [102 Cal.Rptr. 190] (*Farrar*).)

The plaintiff in *Farrar* moved to specially set his case for trial with about six weeks remaining before the mandatory dismissal period would run. The next day, the defendant filed a motion for discretionary dismissal, and obtained an order shortening time so the motion to dismiss could be heard on the same day as the motion to specially set. The court granted the motion to dismiss. On appeal, the plaintiff challenged the order shortening time on much the same ground as Eliceche does here. He argued the trial court had no authority to shorten the 45-day notice period prescribed by former rule 203.5(a) (now rule 373). The appellate court noted, however, that section 1005 permits a court to shorten the time for notice (then 10 days) otherwise required by that section, and said: "We are directed to neither case nor statute indicating that the statutory authority to shorten time was intended not to apply to motions [for discretionary dismissal]." (*Farrar, supra,* 25

Cal.App.3d at p. 705; see *Kunzler v. Karde* (1980) 109 Cal.App.3d 683, 688 [167 Cal.Rptr. 425] [court may shorten time under § 1005 for motion to dismiss, citing *Farrar*]; *Moore v. El Camino Hosp. Dist.* (1978) 78 Cal.App.3d 661, 664 [144 Cal.Rptr. 314] [court has discretion to shorten time so motion to dismiss may be heard concurrently with motion to specially set, citing *Farrar* and § 1005.)[13]

The court then went on to explain the purpose behind the longer notice period prescribed by the rule. "The increase from 10 days' to 45 days' notice . . . was intended to afford a plaintiff ample time within which to complete any necessary preparation and move to set his case for trial, if so inclined. Here, plaintiff already had such a motion on file, so that he was unaffected by the shortened notice of defendant's motion; he suffered no prejudice thereby."[14] (*Farrar, supra,* 25 Cal.App.3d at p. 705.) It is this passage from *Farrar* that the Supreme Court cited with approval in *Wilson.*

The plaintiff in *Wilson* filed a motion to specially set his case for trial, along with a request for an order shortening time to hear the motion before the mandatory dismissal date arrived less than two months later. The defendant filed an opposition arguing both the plaintiff's lack of diligence and its

[13]When *Farrar* was decided, section 1005 simply stated: " 'When a written notice of a motion is necessary, it must be given at least 10 days before the time appointed for the hearing. The court, or the judge thereof, may prescribe a shorter time.' " (*Farrar, supra,* 25 Cal.App.3d at p. 705, italics omitted.) Section 1005 has since been expanded and amended (see fn. 10, *ante*) to provide a longer notice period (21 days) for 12 specific types of motions and for "any other proceeding under this code in which notice is required and no other time or method is prescribed by law or by court or judge." The same provision still appears in subdivision (b) of the statute permitting the court to prescribe a shorter time, but Eliceche maintains this provision now applies *only* to the types of motions listed in subdivision (a) of the statute, which list does not include a motion to dismiss under section 583.110 et seq. We disagree. As we will explain, this interpretation is inconsistent with the purpose underlying the longer notice period ordinarily required for a motion to dismiss under section 583.110 et seq. We also disagree as a matter of statutory construction, but need not reach that issue.

[14]Eliceche asserts in his opening brief that the appellate court in *Farrar* affirmed the judgment of dismissal based upon its finding the plaintiff had waived any objection to the shortened notice by appearing at the dismissal hearing and opposing the motion on its merits. What the court said in *Farrar* was this: "*Additionally,* no objection was made by the plaintiff to the trial court's hearing of the motion [to dismiss]. To the contrary, the record indicates plaintiff appeared to oppose the motion. Any defect in its timeliness thus was waived by the appearance; the purpose of giving notice accordingly was satisfied. [Citations.] Furthermore, plaintiff made no motion to set aside the order of dismissal on the ground it was improvidently made because of lack of sufficient notice. [Citation.]" (*Farrar, supra,* 25 Cal.App.3d at p. 705, italics added.)

Eliceche's assertion is misleading insofar as it suggests waiver was the primary or only ground for the decision. In fact, as we have explained, the court held in effect that the 45-day notice rule does not serve its purpose when applied to a motion to dismiss coincident with a motion to specially set (or, at least, the plaintiff suffers no prejudice if the motion to dismiss is heard on shortened time in that situation).

own prejudice if the trial were to go forward on such short notice, but the defendant did not file a motion for discretionary dismissal. The trial court denied the motion to specially set and, *on its own motion*, dismissed the case for want of prosecution. The plaintiff challenged the dismissal on appeal, based on the trial court's noncompliance with the 45-day notice requirement in rule 203.5(a). The Supreme Court concluded, however, that rule 203.5(a) "has no application to the facts of this case." (*Wilson, supra,* 34 Cal.3d at pp. 558-559.)

In explanation, the court began by observing that rule 203.5(a) applied by its terms only to a *party* seeking dismissal under the discretionary dismissal statute, not to the trial court acting on its own motion.[15] (*Wilson, supra,* 34 Cal.3d at pp. 559-560.) It went on to acknowledge that several previous appellate court decisions had nonetheless assumed that rule 203.5(a) applied to *court-initiated* dismissals. However, the *Wilson* court said, these decisions, whether right or wrong, "have nothing to do with a situation such as the one faced by the trial court in this case." (*Wilson,* at p. 560.)

"[The court] had not hauled plaintiff into court by a court-initiated motion to dismiss. Rather it was faced with plaintiff's own motion to specially set in order to avoid the impact of the [mandatory dismissal statute]. Such motions have traditionally invited an inquiry into the same factors which are relevant to a motion to dismiss under [the discretionary dismissal statute]." (*Wilson, supra,* 34 Cal.3d at pp. 560-561, fn. omitted.)

In the accompanying footnote, the court explained further: "Obviously, where the court itself initiates a motion to dismiss, due process demands notice to the plaintiff adequate to defend against the charge of procrastination. No such problems arise where the issue of lack of diligence is necessarily one of the issues triggered by a plaintiff-initiated motion to specially set." (*Wilson, supra,* 34 Cal.3d at p. 561, fn. 7.)

After noting the plaintiff had appeared at the hearing on the motion to specially set and argued its merits, the *Wilson* court concluded: "Given that preparations for motions to advance and dismiss encompass the same considerations, he must be deemed to have waived any right to 'adequate' notice by not objecting when the trial court orally rendered its decision." (*Wilson, supra,* 34 Cal.3d at p. 561, fn. omitted.) And the court made an even more telling point in the accompanying footnote. "Actually, had the trial court followed the letter of [the] rule . . . and given a 45-day notice, the plaintiff's

[15]Rule 372(a) now provides in part: "If the court intends to dismiss an action on its own motion, the clerk shall set a hearing on the dismissal and mail notice to all parties at least 20 days before the hearing date."

cause would have been defeated anyway . . ." because dismissal would have been *required* 33 days later. (*Id.* at p. 561, fn. 8.) ▮▮▮ The same is true here, where the mandatory dismissal period would have run in less than 45 days after the Bank filed its motion to dismiss.[16]

Thus, when a plaintiff moves to specially set a case for trial to avoid application of the mandatory dismissal statute, the law necessarily injects into the court's consideration of the motion the question whether the plaintiff has been diligent in prosecuting the case. (*Wilson, supra,* 34 Cal.3d at p. 559; *Howard v. Thrifty Drug & Discount Stores, supra,* 10 Cal.4th at p. 440, fn. 6 [same standards apply to motions to dismiss and specially set].) The plaintiff is, or should be, put on notice the issue will arise irrespective of whether the defendant files a motion for discretionary dismissal, and apart from the notice required for such a motion. Consequently, when a section 583.410 motion to dismiss is heard in conjunction with a motion to specially set, the plaintiff may be deemed to have waived the 45-day notice requirement (*Wilson, supra,* 34 Cal.3d at p. 561), and to have suffered no prejudice in any event because it would no longer serve the intended purpose of the requirement to apply it (*Farrar, supra,* 25 Cal.App.3d at p. 705). (See *Mesler v. Bragg Management Co.* (1990) 219 Cal.App.3d 983 [268 Cal.Rptr. 522] and *San Ramon Valley Unified School Dist. v. Wheatley-Jacobsen, Inc.* (1985) 175 Cal.App.3d 1050 [221 Cal.Rptr. 342] [where the parties raised no objection to hearing a motion to dismiss on shortened time concurrently with a motion to specially set].)

A similar sort of situation existed in *Nye v. 20th Century Ins. Co.* (1990) 225 Cal.App.3d 1041 [275 Cal.Rptr. 319]. There the plaintiff moved to

---

[16]This observation by the court in *Wilson* exposes the central fallacy in Eliceche's argument. If he is correct, a defendant would be effectively prevented from filing a motion for discretionary dismissal once there are less than 45 days remaining in the mandatory dismissal period. This is not the law, as the *Wilson* footnote points out.

A court inclined to dismiss an action for want of diligent prosecution "should not exercise its discretion to dismiss on the basis of inconvenience to the court and in the guise of a refusal to specially set." (*Weeks v. Roberts* (1968) 68 Cal.2d 802, 807 [69 Cal.Rptr. 305, 442 P.2d 361].) A preferred procedure would be to grant a preferential trial date without prejudice to a subsequent (and timely) motion to dismiss. (*Id.* at p. 808.) However, the court retains the discretion to deny a motion to specially set, in consideration of the factors affecting a motion for discretionary dismissal, *even when* the likely consequence of doing so will be a mandatory dismissal. (*Salas v. Sears, Roebuck & Co.* (1986) 42 Cal.3d 342, 347-349 [228 Cal.Rptr. 504, 721 P.2d 590] [discussing *Weeks* in light of a subsequent amendment to the discretionary dismissal statute permitting the court to dismiss on its own motion]; *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 440 [41 Cal.Rptr.2d 362, 895 P.2d 469] [plaintiff is not automatically entitled to a preferential trial setting merely because failure to specially set would cause mandatory dismissal period to expire].) Thus, the option to hear a motion to dismiss on shortened notice, at the same time as a motion to specially set, may work to a plaintiff's advantage by preserving the opportunity for the plaintiff to show he or she acted with reasonable diligence. (See *Salas, supra,* 42 Cal.3d at p. 349.)

specially set her case for trial, and asked that the motion be heard on shortened time, only about five weeks before the case would become subject to mandatory dismissal. The trial court set the hearing on shortened time and permitted the defendant to file a motion to dismiss for hearing on the same date. The court denied the motion to specially set, and granted the motion to dismiss. The plaintiff challenged the judgment on appeal on the ground she had been given less than the 45 days' notice of the dismissal motion required by rule 373(a). The court rejected this claim in reliance on *Wilson*.

"[The plaintiff] can hardly complain on that ground, having come to court with less than 45 days remaining before the end of the [mandatory dismissal] period, having then sought an order shortening time so that her motion to specially set could be heard; and not having objected on the ground of insufficient notice when the trial court allowed [the defendant] to file its motion on shortened time, or during the arguments on the merits on the motions or on reconsideration of the court's orders." (*Nye v. 20th Century Ins. Co., supra,* 225 Cal.App.3d at p. 1046.) Much the same can be said in this case.

Eliceche attempts to distinguish the present case from these just discussed on three grounds. First, he stresses he did not file a motion to specially set his case for trial. This is true strictly speaking. But he requested and was granted a preferential trial date by the court administrator. The effect was the same. Indeed, his real point seems to be that, because the request was not handled as it should have been (by the court on a noticed motion to specially set), he was never actually required to justify the request in terms of the factors applicable to a motion for discretionary dismissal (rule 373(e)). Therefore, he would seem to be arguing, he should not be deemed to have waived notice of the Bank's subsequent dismissal motion per *Wilson* and *Farrar*. We find this reasoning completely unpersuasive. As a result of the shortcut Eliceche was allowed to use in this case, the Bank was denied the opportunity to bring a motion to dismiss in a more timely manner, and/or to oppose the motion to specially set for Eliceche's lack of diligent prosecution (despite its efforts to do so). Eliceche may not enjoy the benefits of a preferential trial date while at the same time escaping all scrutiny of his dilatory behavior.

Second, Eliceche claims he opposed the order shortening time "to the extent he was able, given that he was never told of when the application would be presented to the court." In fact, as we discuss below, Eliceche received actual notice on June 30 of the Bank's motion to dismiss and ex parte application for an order shortening time. The court signed the order on July 10 without having received opposition from Eliceche.

Finally, Eliceche notes that he *did* oppose the order shortening time at the July 21 dismissal hearing, and he *did not* argue the merits of the dismissal motion. His point is apparently that he did not waive his objections to the order shortening time. We agree, and will continue to address them on the merits.

To summarize his first objection, Eliceche contends the discretion granted the trial court under section 1005, subdivision (b) to shorten time for notice of a motion does not extend to the 45-day notice period required by rule 373(a) for a motion to dismiss under section 583.410 et seq. Absent such express legislative authorization, he continues, the court is powerless to hear a motion to dismiss on less than 45 days' notice. The decisions we have just discussed effectively refute this claim. As the court said in *Wilson*, "the very purpose of the lengthy notice period provided for in [rule 373] proves that it was not meant to apply to a motion to dismiss which follows a hearing on motion to specially set." (*Wilson, supra,* 34 Cal.3d at p. 561.) As we have said, Eliceche requested and was granted a preferential trial date, and so cannot complain the Bank's subsequent motion to dismiss was heard on shortened time.

### Did the Bank's Ex Parte Application for an Order Shortening Time Comply with Rule 379?

█ Eliceche contends the court should not have considered, much less granted, the Bank's ex parte application for an order shortening time for the dismissal hearing because the application failed in many respects to comply with the requirements of rule 379. He focuses on what he alleges was the Bank's failure to give him notice of a hearing on the application, and more importantly on the court's failure to hold such a hearing at which he could present his objections to the application.

Rule 379 plainly contemplates that the applicant for an ex parte order usually will make a "personal appearance" to "present" the application to the court, which appearance is in some respects a "hearing."

"(a) An application for an order shall not be made ex parte unless it appears by affidavit or declaration (1) that within a reasonable time before the application the party informed the opposing party or the opposing party's attorney *when and where the application would be made* . . . .

"(b) A party seeking an ex parte order shall notify all parties no later than 10:00 a.m. *the court day before the ex parte appearance,* absent a showing of exceptional circumstances. . . . [¶] . . . [¶]

"(c) When notice of an application is given, the person giving notice shall state with specificity the nature of the relief to be requested and *the date, time, and place for the presentment of the application,* and shall attempt to determine whether the opposing party and/or counsel will appear to oppose the application. [¶] . . . [¶]

"(f) *Parties appearing at the ex parte hearing* shall serve the ex parte application or any written opposition on all other appearing parties at the first reasonable opportunity. Absent exceptional circumstances, no hearing shall be conducted unless such service has been made.

"(g) *An ex parte application will be considered without a personal appearance of the applicant or applicant's counsel in the following cases only: . . . (3) stipulations by the parties or other orders of the court.*" (Italics added.)

The Bank served Eliceche with both its motion for discretionary dismissal and its ex parte application for an order shortening time, first by facsimile transmission on June 30 and then by a delivery service on July 3, 2000. However, the Bank did not give Eliceche notice, either then or later, of the "ex parte hearing" because there was none. Instead, the court simply signed the order on July 10. Eliceche contends the court's failure to conduct a hearing, in combination with assorted shortcomings in the Bank's application, effectively invalidated the order. The Bank responds by asserting it "[o]bviously . . . had applied for [and been granted] an order of the court" pursuant to rule 379(g)(3) releasing it from having to make a personal appearance. There is, however, no evidence in the record of any such order.

We find it unnecessary under the circumstances to decide whether the court was required to conduct a hearing *before* signing the order, or whether the Bank's ex parte application complied with rule 379 in every respect, because the court did in fact consider all of Eliceche's objections to the order at the July 21 hearing, *before* taking up the motion to dismiss.

In *Israni v. Superior Court* (2001) 88 Cal.App.4th 621 [106 Cal.Rptr.2d 48], the City of San Diego filed a complaint in eminent domain to acquire property owned by Ashok Israni. The city also filed, without notice to Israni, an ex parte application for an order permitting it to take immediate possession of the property pursuant to section 1255.410. This section permits the court to make such an order, prior to entry of judgment on the complaint, upon a showing the plaintiff has an urgent need for possession and no person then in lawful possession will be displaced. The court granted the application and issued an "order of immediate possession" (OIP) the same day, to take effect a week later. The city served Israni the following day with copies of

the complaint and OIP. Israni promptly applied to the court to vacate or stay the OIP on the ground he had not been given notice of and an opportunity to be heard at the ex parte proceeding, in violation of his right to due process guaranteed by the state and federal Constitutions, as well as rule 379. The court stayed the OIP pending a hearing on Israni's request, but it denied the request once the hearing was completed. Israni then petitioned the appellate court for a writ of mandate directing the lower court to vacate the OIP.

The appellate court denied the petition. It acknowledged Israni was entitled to notice prior to the ex parte hearing, but concluded he had suffered no loss of due process because he had received notice and an opportunity to be heard *before the effective date* of the OIP.

"Israni had the opportunity at the hearing to show that the OIP should not have initially been granted because section 1255.410's conditions were not satisfied. Had his showing convinced the trial court, it would have been required by section 1255.440 to vacate the OIP. In that event, the OIP would never have become effective and Israni could not have been deprived of any significant property interest. Israni effectively received a de novo hearing on the issuance of the OIP before its effective date. As a result, he was not denied his procedural due process rights and was not prejudiced by any violation of California Rules of Court, rule 379(a)." (*Israni v. Superior Court, supra*, 88 Cal.App.4th at p. 634.)

The court reached a similar conclusion in *Cordova, supra*, 196 Cal.App.3d 1526, a case more nearly analogous to the present one. In *Cordova*, the trial was set for a date about eight months shy of the mandatory dismissal deadline. The parties thereafter agreed to stipulate to a continuance, but did not offer the stipulation to the court until the date set for trial. The court refused to accept the stipulation; the parties were unable to proceed; and so the court dismissed the case on its own motion for delay in prosecution. The plaintiff filed a motion for reconsideration supported by declarations and exhibits setting out her position in some detail. The defendant filed no opposition. The court denied the motion and entered a judgment of dismissal.

On appeal, the plaintiff challenged the dismissal as a violation of her due process right to notice and an opportunity to be heard. The appellate court concluded, however, that the lower court's "unorthodox procedure" did not require reversal of the judgment. It explained that an individual is entitled to due process *before* he or she may be deprived of a fundamental interest. The dismissal in *Cordova* was effective not when the court announced the action was dismissed, but two months later when judgment of dismissal was entered, following the court's denial of the motion for reconsideration.

"On that motion [for reconsideration] plaintiff was given the opportunity to demonstrate to the court that the action should not be dismissed. Only after denial of the motion to reconsider was judgment of dismissal entered. Thus, a hearing was afforded plaintiff on the propriety of the dismissal before it became effective; plaintiff was given the opportunity to be heard at a meaningful time and in a meaningful way. For purposes of due process, we consider it irrelevant that the hearing was given in conjunction with motion for reconsideration initiated by plaintiff rather than on motion to dismiss noticed by the court. The important factor is that plaintiff was given a hearing on the issue of dismissal before the action was dismissed." (*Cordova, supra*, 196 Cal.App.3d at pp. 1531-1532.)

The court in *Cordova* then went on to conclude the motion to dismiss should not have been granted because the plaintiff had been diligent in preparing for trial; the failure to obtain a continuance was attributable to a miscommunication by the defendant; and the defendant would not have been prejudiced by delaying the trial date. (*Cordova, supra*, 196 Cal.App.3d at pp. 1535-1536.) In view of the *Cordova* court's decision on the merits of the dismissal motion, Eliceche argues its discussion of the plaintiff's due process claim was "mere dicta." We do not agree. It would not have been necessary for the court to consider the dismissal motion on its merits if the plaintiff's due process objection to the motion had been sustained. The same is true here, of course.

In this case, Eliceche was given the opportunity to present his objections to the order shortening time, both in his written opposition filed on July 11 and at the dismissal hearing on July 21. It is immaterial the opportunity did not arise until after the order was issued, so long as it was before the order took effect (i.e., before the court considered the dismissal motion on shortened notice).

The case upon which Eliceche relies for the contrary result is distinguishable. In *Datig v. Dove Books, Inc.* (1999) 73 Cal.App.4th 964 [87 Cal.Rptr.2d 719], the court sustained the defendant's demurrer to the complaint with 20 days' leave to amend. The plaintiff filed an amended complaint on the 20th day. Two days later, the defendants, without notifying the plaintiff, made an ex parte application for an order dismissing the complaint for failure to file a timely amendment. In fact, the defendants knew the plaintiff had filed the amended complaint within the prescribed time, but did not disclose this fact to the court. The court granted the application and entered a judgment of dismissal the same day. The plaintiff, upon learning of the judgment, moved to set it aside. The motion was heard by a different judge, who tentatively granted it, but then continued the matter to some unspecified date so the first

judge could decide it. Sixty days after the judgment of dismissal was entered, but before the continued hearing could be set, the plaintiff filed a notice of appeal.

The plaintiff challenged the dismissal on the ground she had not been given notice of the ex parte hearing, and the application had failed to comply in other respects with the requirements of rule 379. The appellate court reversed the judgment after concluding "(1) it was obtained without notice or any excuse for lack of notice, and (2) there was no factual basis for its entry." (*Datig v. Dove Books, Inc., supra,* 73 Cal.App.4th at p. 967.) Eliceche seizes on this first reason and argues it applies here just as well. However, there is an obvious and important difference between that case and this one, to wit: Eliceche was given notice and a hearing before the ex parte order took effect, whereas the plaintiff in *Datig* was not. As a matter of fact, the defendants in *Datig* argued on appeal that the plaintiff had waived her objections to the ex parte dismissal by filing a notice of appeal (without waiting for a hearing on her motion to vacate the dismissal). The court rejected this argument, noting the plaintiff had little choice but to file the notice to preserve her right to appeal. (*Id.* at p. 979.)

In sum, Eliceche suffered no loss of his due process right to challenge the order shortening time, and he was not prejudiced by the Bank's violation of rule 379(a), if any. (*Israni v. Superior Court, supra,* 88 Cal.App.4th at p. 634.)

*Did the Order Shortening Time Deny Eliceche the Opportunity to Prepare and Present His Opposition to the Motion to Dismiss?*

The order shortening time required Eliceche to file his opposition to the motion to dismiss no fewer than 10 days before the dismissal hearing on July 21, 2000, i.e., by July 11. The order was filed on July 10, and Eliceche asserts he did not actually receive it until the next day. Therefore, he contends he was faced with a hobson's choice of filing no opposition or requesting a continuance, which might have pushed back the trial date (August 8) beyond the mandatory dismissal deadline (on August 12, 2000). The effect, he maintains, was to deny him an adequate opportunity to challenge the dismissal motion, in violation of his right to due process.

We will assume for purposes of our discussion that Eliceche could not have been certain until July 11 that the dismissal hearing would go forward on July 21. That is, he argues that between June 30, when he received notice of the dismissal hearing, until July 11, when he received the order shortening time, he was entitled to assume there would be a hearing on the order at

which he might convince the court not to issue it. It does not follow, however, that by July 11 it was too late for Eliceche to mount any meaningful opposition to the motion to dismiss. Indeed, the problem was not really one of time at all. Eliceche made a tactical decision *not* to oppose the dismissal motion on the merits. He cannot be heard now to complain he was denied something he deliberately chose to forgo.

In response to the same arguments Eliceche makes here, the court explained at the July 21 hearing that it had been aware of the tight briefing schedule when it signed the order shortening time, and it had expected and would have granted a request by Eliceche to continue the hearing to a later date to permit him to file pleadings in opposition. There were 18 calendar days (12 court days) between the July 21 hearing and the August 8 trial date in which to schedule a continued hearing. Moreover, the mandatory dismissal period would have been tolled for any period during which bringing the action to trial was "impossible, impracticable, or futile" (§ 583.340, subd. (c)), such as might arguably have been the case if it became necessary to push back the trial date to make room for a continued dismissal hearing. Of course, "[t]he determination whether it was 'impossible, impracticable, or futile' to bring a case to trial within a given time period is generally fact specific, depending on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles." (*Howard v. Thrify Drug & Discount Stores, supra,* 10 Cal.4th at p. 438.)

In any event, Eliceche did not request a continuance and did not object to the dismissal motion on the merits, but chose instead to stand on his procedural objections to the court's order shortening time.

"MS. TRINDADE: It is my intention to rest on the fact that I believe that notice has not been complied with, that the Court doesn't have jurisdiction to shorten time on this particular motion given the fact that there was no motion for special setting."

Eliceche readily acknowledges his purpose in taking this position was to avoid being found to have waived his objections to shortened notice of the dismissal hearing. He was making, in effect, a special appearance at the hearing to contest the court's jurisdiction to hear the motion to dismiss. (See 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 190, pp. 756-757; §§ 197-198, pp. 763-764; § 205, p. 771.) If Eliceche had opposed the dismissal motion on the merits at the July 21 hearing, or if he had requested a continuance of the hearing to prepare his opposition, he would have been making a general appearance. (2 Witkin, Cal. Procedure, *supra,* Jurisdiction, § 202(2), p. 768.)

"It is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of the motion. [Citations.] This rule applies even when no notice was given at all. [Citations.] Accordingly, a party who appears and contests a motion in the court below cannot object on appeal or by seeking extraordinary relief in the appellate court that he had no notice of the motion or that the notice was insufficient or defective." (*Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930 [119 Cal.Rptr. 835] [holding plaintiff waived claim he was not given 45 days' notice of sua sponte motion for discretionary dismissal], disapproved on a different point in *Wilson, supra,* 34 Cal.3d at p. 560.)

Thus, Eliceche was required to make an election: he could object to the order shortening time, or he could contest the dismissal motion on its merits, but he could not do both. Having chosen to do the former, he may not now complain he was denied the opportunity to also do the latter.

"This court understands the dilemma faced by an attorney who claims his client was not properly served with motion papers and/or that inadequate notice of the hearing was received. If counsel is convinced his or her legal position is correct, he or she may appear at the hearing without filing a response to the motion and request a continuance for the purpose of preparing a proper response. If counsel makes a complete record relating to both the defective service and/or inadequate notice and the inability to prepare a proper response, and the court denies the continuance, the record will be well preserved for any future writ proceeding or appeal.

"If counsel is unwilling to take the chance that a continuance will be granted, he or she should file the best opposition possible under the circumstances. The opposition should include counsel's position on the defective-service/inadequate-notice issue, as well as the merits. The opposition should contain a complete discussion of counsel's position as to why a more complete opposition was not able to be filed (e.g., because the defective notice of motion did not give counsel adequate time to prepare a response). Counsel should then appear at the hearing, object to the hearing taking place because the service was defective and/or inadequate notice of the hearing was received; again explain to the court the prejudice that has been suffered by reason of the defective service and/or inadequate notice; and request a continuance of the hearing so that a proper response to the motion may be filed. Obviously, if the court denies a continuance, counsel should be prepared to argue the motion on the merits. If, however, the steps described in this paragraph are taken, the record will be well preserved for any future writ proceeding or appeal." (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697-698 [91 Cal.Rptr.2d 844].)

Eliceche took neither course. Most importantly, he did not request a continuance, which would have been granted and conceivably could have been accomplished without triggering a mandatory dismissal. Moreover, we emphasize again that Eliceche brought these scheduling problems on himself by failing to arrange a trial setting conference until there were only 46 days remaining before the mandatory dismissal date. (See *Nye v. 20th Century Ins. Co., supra,* 225 Cal.App.3d at p. 1046.) Eliceche is foreclosed under these circumstances from arguing he was denied a reasonable opportunity to oppose the Bank's motion for discretionary dismissal. (*Carlton v. Quint, supra,* 77 Cal.App.4th at p. 698.)

### DISPOSITION

The judgment (order of dismissal) is affirmed. Costs are awarded to respondents.

Dibiaso, Acting P. J., and Levy, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 5, 2003.